# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3035

_____

Dan McCarthy, as Parent and as Next &ast;
Friend of his Minor Daughter, &ast;
&ast;
        Plaintiff - Appellant, &ast;
&ast; Appeal from the United States
    v. &ast; District Court for the Western
&ast; District of Arkansas.
Ozark School District; Faye Boozman, &ast;
in his Official Capacity as Director, &ast;
State of Arkansas Department of Health; &ast;
John Doe, 1 through 20, in their Official &ast;
Capacities as Agents, Servants, &ast;
Employees or Officials of the State of &ast;
Arkansas, Department of Health, &ast;
&ast;
        Defendants - Appellees. &ast;

_____

No. 02-3094

_____

Shannon Law, as Parent and Legal &ast;
Guardian of her Minor Children Joey &ast;
Law, Rob Law, and Claire Law; &ast;
&ast;
        Plaintiff, &ast;
&ast;

Susan Brock, as Parent and Legal         *
Guardian of her Minor Children Harley     *
Brock, Mason Brock, Kathrine Brock        *
and Michael Jarrell,                      *
                                          *
         Plaintiff - Appellant,           *
                                          *    Appeal from the United States
     v.                                   *    District Court for the Eastern
                                          *    District of Arkansas.
                                          *
Fay W. Boozman, in his Official           *
Capacity as Director of the Arkansas      *
Department of Health; Cutter Morning      *
Star School District; Lake Hamilton       *
School District; Raymond Simon, in his    *
Official Capacity as Director of the      *
Arkansas Department of Education,         *
                                          *
         Defendants - Appellees.          *

_____

No. 02-3104

_____

Cynthia Boone, Individually and as        *
Next Friend of Ashley Boone,              *
                                          *
         Plaintiff - Appellant,           *
                                          *    Appeal from the United States
     v.                                   *    District Court for the Eastern
                                          *    District of Arkansas.
Cabot School District; Fay Boozman, in    *
his Official Capacity as the Director of  *
the Arkansas Department of Health;        *
John Doe, 1 through 20, in their Official *
Capacities as Agents, Servants,          *

Employees or Officials of the State of     *
Arkansas, Department of Health,     *
    *
    Defendants - Appellees.     *

_____

No. 02-3195

_____

Shannon Law, as Parent and Legal     *
Guardian of her Minor Children Joey     *
Law, Rob Law, and Claire Law,     *
    *
    Plaintiff,     *
    *
Susan Brock, as Parent and Legal     *
Guardian of her Minor Children Harley     *
Brock, Mason Brock, Kathrine Brock,     *   Appeal from the United States
and Michael Jarrell,     *   District Court for the Eastern
    *   District of Arkansas
    Plaintiff - Appellee     *
    *
    v.     *
    *
Fay W. Boozman, in his Official     *
Capacity as Director of the Arkansas     *
Department of Health,     *
    *
    Defendant,     *
    *
Cutter Morning Star School District;     *
Lake Hamilton School District,     *
    *
    Defendants - Appellants,     *
    *
Raymond Simon, in his Official     *

-3-

Capacity as Director of the Arkansas      *
Department of Education,                   *
                                           *
          Defendant.                       *

_____

Submitted: March 10, 2003
Filed: March 8, 2004

_____

Before HANSEN[1], Chief Judge, RILEY and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

These consolidated appeals involve the application of an Arkansas statute that requires the immunization of Arkansas schoolchildren against Hepatitis B. Ark. Code Ann. § 6-18-702(a).[2] The district courts[3] held that the statute's religious beliefs

---

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

[2]Ark. Code Ann. § 6-18-702 (2002), as in effect at the time of the district courts' decisions, provided:

(a) Except as otherwise provided by law, no infant or child shall be admitted to a public or private school or child care facility of this state who has not been age appropriately immunized from poliomyelitis, diphtheria, tetanus, pertussis, red (rubeola) measles, rubella, *and other diseases as designated by the State Board of Health,* as evidenced by a certificate of a licensed physician or a public health department acknowledging the immunization.
. . . .
(d)(2) The provisions of this section shall not apply if the parents or legal guardian of that child object thereto on the grounds that

-4-

exemption violated the Establishment Clause of the First Amendment because the exemption applied only to the "religious tenets and practices of a *recognized* church or religious denomination." Ark. Code Ann. § 6-18-702(d)(2) (2000) (emphasis added). The district courts then determined that the exemption was severable from the remainder of the statute. Construing the statute without the exemption, the district courts held that the underlying immunization requirement survived Due Process, Equal Protection, Free-Exercise, and Hybrid Rights challenges. On appeal, we do not reach the merits of the claims raised below because the Arkansas legislature rendered these issues moot when it broadened the exemption to encompass philosophical as well as religious objections. See Ark. Code Ann. § 6-18-702(d)(4)(A) (2003). Instead, we set forth the general history of these matters, explain the changes in Arkansas law, and address the issue of mootness as discussed by the parties in their supplemental, post-argument briefs.

## I. Background

Because the issues in this case do not turn on the specific facts that differentiate each individual party, we forgo a detailed discussion of the individual parties and the specific facts that gave rise to their actions. Instead, we describe the parties generally

---

immunization conflicts with the religious tenets and practices of a recognized church or religious denomination of which the parent or guardian is an adherent or member.

(Emphasis added). The State Board of Health, in cooperation with the Board of Education, on July 27, 2000, promulgated regulations that listed Hepatitis B as one of the designated diseases under Ark. Code Ann. § 6-18-702(a).

[3]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas (Case No. 02-3035), and the Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas (Case Nos. 02-3094, 02-3104, and 02-3195).

by their respective roles. The first group of parties consists of Arkansas schoolchildren who were excluded from school or threatened with exclusion from school for failure to receive immunization treatments for Hepatitis B. This group also includes the parents of the schoolchildren (collectively, the "Schoolchildren"). The second group consists of the Arkansas Departments of Health and Education and various officials from these two departments, including Fay W. Boozman, the Director of the Arkansas Department of Health (collectively, the "Officials"). The final group consists of various individual Arkansas school districts (collectively, the "School Districts"). In each case, the Schoolchildren brought suit against the School Districts and/or the Officials.

The Schoolchildren in each case alleged that they held sincere religious beliefs that prevented each child from being immunized for Hepatitis B. The Schoolchildren did not belong to any recognized religion that had as one of its tenets opposition to immunization for Hepatitis B. We, like the district courts, assume for the purposes of our analysis that the Schoolchildren held sincere religious beliefs against Hepatitis B vaccination.

In Case No. 02-3035 the Schoolchildren argued that the religious beliefs exemption violated the Establishment Clause of the First Amendment by permitting exemptions only for beliefs associated with a recognized religion. They also argued that the underlying immunization requirement violated their Equal Protection and Due Process rights under the Fourteenth Amendment. The district court accepted the Schoolchildren's arguments regarding the Establishment Clause challenge, but held the religious beliefs exemption severable. The district court then rejected the Schoolchildren's Equal Protection and Due Process challenges to the underlying immunization requirement, finding that the Supreme Court had repeatedly ruled such requirements permissible. See Zucht v. King, 260 U.S. 174, 176-77 (1922); Jacobson v. Massachusetts, 197 U.S. 11, 27-29 (1905). Accordingly, the district court preserved the immunization requirement but severed the exemption.

Noting the hollow nature of the Schoolchildren's victory, the district court stated:

> Our holding does not afford relief of any real value to the Plaintiff because his daughter remains subject to receiving the required shots as a condition of attending school within the state of Arkansas. This decision will also be of understandable concern to those who previously enjoyed the immunization exemption as adherents or members of a recognized church or religious denomination. However, the recourse of both groups is to communicate their concerns to the Arkansas Legislature, for it is within the province of the legislature and not this Court to enact a religious exemption provision that comes within constitutional boundaries.

In Case No. 02-3104, the Schoolchildren brought suit against the Officials and School Districts. The district court adopted the analysis of the earlier opinion and, in addition, set forth a separate analysis to conclude that the religious beliefs exemption was unconstitutional and severable. The district court rejected the Schoolchildren's argument that the First Amendment's Free Exercise Clause demanded a compelling interest analysis of the compulsory immunization requirement. Instead, the district court found that the statute was a neutral statute of general applicability that did not target religious beliefs. The district court also rejected the argument that other constitutional rights, such as, inter alia, a parent's right to control a child's education, reinforced the underlying Free Exercise Rights challenge and mandated the application of compelling interest review under a Hybrid Rights analysis. See, e.g., Employment Div., Oregon Dep't of Human Res. v. Smith, 494 U.S. 872, 881 (1990) (discussing the application of compelling interest review in cases that involve alleged First Amendment violations in combination with other alleged constitutional violations). Finally, the district court rejected a Substantive Due Process challenge under the Fourteenth Amendment in which the Schoolchildren alleged that the right to refuse medical treatment was a fundamental liberty interest that mandated compelling interest review of the compulsory immunization statute.

In Case No. 02-3094, the Schoolchildren brought suit against the Officials and the School Districts and argued issues similar to those described above. In addition, the Schoolchildren argued that because the compulsory immunization statute provided individualized exemptions for secular purposes, such as medical exigencies, a general religious exemption was necessary to avoid a Free Exercise violation. The district court rejected these arguments.

Finally, Case No. 02-3195 involves a cross-appeal from two of the School Districts, the Morningstar and Lake Hamilton School Districts. The Morningstar and Lake Hamilton School Districts moved for dismissal arguing that they were involved in no justiciable case or controversy with the Schoolchildren. Pointing to the fact that the relevant Arkansas statutes and rules provide for criminal sanctions against school officials who fail to enforce the immunization requirements, the Morningstar and Lake Hamilton School Districts characterized themselves as disinterested bystanders caught in the crossfire between the Schoolchildren and the Officials. See Ark. Code Ann. § 6-18-702(c)(2)(B) (2000) ("Any school official, parent, or guardian violating the regulations shall be subject to the penalties imposed herein."); Id. § 6-18-702(e) (2000) ("any person found guilty of violating the provisions of this section or the regulations promulgated by the State Board of Education or the division for the enforcement hereof shall be guilty of a misdemeanor."). The district court rejected the motion to dismiss, finding that the Lake Hamilton and Morningstar School Districts were proper parties to the litigation.

After obtaining jurisdiction, we entered a temporary stay to permit the non-immunized Schoolchildren to attend school pending resolution of their appeals. After oral arguments, we noted that the Schoolchildren had followed the district court's suggestion and communicated their concerns to the Arkansas legislature. As a result, the Arkansas legislature had amended the exemption portion of the statute to omit reference to "recognized" religions and to provide broader exemptions based on

"religious or philosophical beliefs." Id. § 6-18-702 (d)(4)(A) (2003).[4] It appeared,

_____

[4]Ark. Code Ann. § 6-18-702 (d)(4) provides:

(A) The provisions of this section shall not apply if the parents or legal guardian of that child object thereto on the grounds that immunization conflicts with the religious or philosophical beliefs of the parent or guardian.

(B) The parents or legal guardian of the child shall complete an annual application process developed in the rules and regulations of the Department of Health for medical, religious, and philosophical exemptions.

(C) The rules and regulations developed by the Department of Health for medical, religious, and philosophical exemptions shall include, but not be limited to:

(i) A notarized statement requesting a religious, philosophical, or medical exemption from the Department of Health by the parents or legal guardian of the child regarding the objection;

(ii) Completion of an educational component developed by the Department of Health that includes information on the risks and benefits of vaccination;

(iii) An informed consent from the parents or guardian that shall include a signed statement of refusal to vaccinate based on the Department of Health's refusal-to-vaccinate form; and

(iv) A signed statement of understanding that:

(a) At the discretion of the Department of Health, the unimmunized child or individual may be removed from day care or school during an outbreak if the child or individual is not fully vaccinated; and

however, that the broadened exemption was not yet in force because the Arkansas Department of Health had not passed necessary implementing regulations and the amended statute specifically prohibited the granting of exemptions prior to passage of the implementing regulations. See Id. § 6-18-702 (d)(4)(D). Accordingly, it was not clear whether any Schoolchildren would be excluded from school in the absence of our temporary stay.

We directed the parties to submit supplemental briefs to address whether the anticipated availability of a broadened exemption mooted the underlying challenges to the immunization requirement. Subsequently, the Arkansas Department of Health passed the necessary implementing regulations.[5] No claims under the newly amended exemption are before the court at this time, and no Schoolchildren claim to have been

---

(b) The child or individual shall not return to school until the outbreak has been resolved and the Department of Health approves the return to school.

(D) No exemptions may be granted under this subdivision (d)(4) until the application process has been implemented by the Department of Health and completed by the applicant.

[5]Rules and Regulations Pertaining to Immunization Requirements, § IV(A), (C) and (D), slip at 4-5, at http://www.healthyarkansas.com/rules_regs/immunization _requirements_2003.pdf (promulgated in part under the authority of Ark. Code Ann. § 6-18-702, signed by Governor Mike Huckabee on July 31, 2003). The relevant provisions of the new exemption requirement require religious and philosophical objectors to complete an annual application, sign a notorized statement claiming conflict with religious or philosophical beliefs, complete an educational component regarding the risks and benefits of vaccination, and sign a statement of informed consent for the exclusion of a non-immunized child from school in the event of an outbreak.

denied the benefit of the new exemption under the amended statute and the new, implementing regulations.

## II. Analysis

We first address the basic question of any mootness analysis: whether the plaintiffs still hold a personal interest in the outcome of the action or whether changed circumstances already provide the requested relief and eliminate the need for court action. Next we address exceptions to the mootness doctrine, namely, whether the controversy of the present cases is one that is likely to recur but evades review and whether the Arkansas legislature's amendment of the statute is merely a voluntary cessation of challenged conduct that is insufficient to protect the Schoolchildren on an ongoing basis. Finally, we do not address the Schoolchildren's newly raised challenges to certain procedural requirements of the new statute and regulations because such challenges are not ripe for review.

## A. Mootness

"Under Article III of the Constitution, federal courts 'may adjudicate only actual, ongoing cases or controversies.'" National Right to Life Political Action Comm. v. Connor, 323 F.3d 684, 689 (8th Cir. 2003) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). Various doctrines, including the doctrine of mootness, provide the tools used to determine whether a plaintiff presents a justiciable case or controversy. Our court has stated:

> The Supreme Court has repeatedly described the mootness doctrine as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 538 U.S. 167, 189 (2000) (citations omitted). Thus, "[w]e do not have jurisdiction over

-11-

cases in which 'due to the passage of time or a change in circumstances, the issues presented . . . will no longer be 'live' or the parties will no longer have a legally cognizable interest in the outcome of the litigation.'" Van Bergen v. Minnesota, 59 F.3d 1541, 1546 (8th Cir. 1995) (quoting Arkansas AFL-CIO v. FCC, 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc)).

National Right to Life Political Action Comm., 323 F.3d at 691. The first question we address, then, is whether the current litigation still presents to the Schoolchildren an opportunity for redress or whether the Schoolchildren have received the entirety of their requested relief from the Arkansas legislature and, therefore, no longer possess a personal interest in the litigation.

In each of the appealed cases, the Schoolchildren sought an exemption to allow them to attend public school in Arkansas without receiving immunization against Hepatitis B. Review of the amended immunization statute and its implementing regulations make clear that the statutory exemption now available to all the individual Schoolchildren provides precisely this relief. The Schoolchildren point to no other relief that they requested in the lower courts. Instead, they argue that an exception to the mootness doctrine applies and that we must address the merits of their cases to eliminate the risk that Arkansas might later repeal the newly enacted exemption provision. Further, they argue that the new exemption provision itself is unconstitutional because it discriminates against religious objectors and imposes undue burdens through the exemption application process.[6] These arguments, however, do not speak to the underlying issue of mootness. Looking, as we must, at the relief requested and the scope of the relief made available by the Arkansas

---

[6]The Schoolchildren also argued against mootness on the grounds that, at the time of supplemental briefing, the implementing regulations were open for comment and, therefore, not yet effective. This argument, however, was transitory and became irrelevant on July 31, 2003 when the governor of Arkansas signed the implementing regulations.

legislature, and finding no further relief that might be appropriate or available, it is clear that the Schoolchildren no longer present a live case or controversy. Their claims are moot.

## B. Exceptions to Mootness

Notwithstanding this finding of mootness, we may still decide a case on its merits if the controversy in the case is "capable of repetition yet evad[es] review." Arkansas AFL-CIO v. F.C.C., 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc). One condition that must exist before this exception applies is "a reasonable expectation that the same complaining party will be subject to the same action again." Van Bergen v. Minnesota, 59 F.3d 1541, 1547 (8th Cir. 1995). The Schoolchildren argue that this exception applies because Arkansas voluntarily ceased the challenged action when it amended the immunization statute, and, therefore, might repeal the new exemption provision at any time if not prohibited from doing so by court order. In advancing this argument, however, the Schoolchildren speculate as to a mere theoretical possibility. A speculative possibility is not a basis for retaining jurisdiction over a moot case. Id. ("The party need not show with certainty that the situation will recur, but a mere physical or theoretical possibility is insufficient to overcome the jurisdictional hurdle of mootness.").

Review of the facts makes clear the speculative nature of the Schoolchildren's argument. The Arkansas legislature promptly acted to provide a broadened exemption for philosophical and religious objectors as well as objectors who claimed medical necessity. The legislature took this action even though the outstanding district court decisions held the existing statute constitutional even without a religious exemption. The legislature took this action not only to protect the Schoolchildren, but also to protect additional children not involved in this litigation who had received exemptions under the earlier, unconstitutional exemption provision. These additional children, like the Schoolchildren, would have been subject to exclusion from school

-13-

under the district courts' decisions. Simply put, the legislature acted quickly for the benefit of the Schoolchildren and other citizens of Arkansas to replace the stricken exemption provision with an exemption it believed would pass constitutional muster. In providing relief for philosophical objectors as well as eliminating the requirement that religious objectors belong to a "recognized religion," the legislature provided relief greater than that requested in the present litigation.

The Department of Health also acted quickly by passing regulations before the start of a new school year. In sum, we find nothing to suggest a likelihood that Arkansas might repeal its exemption or that Arkansas voluntarily ceased the challenged behavior merely to thwart our jurisdiction. With no "reasonable expectation" that the Schoolchildren will again face forced immunization for Hepatitis B without the possibility of exemption, the exception to the mootness doctrine does not apply.

The Schoolchildren argue not only that the general mootness exception applies, but also that, because the state voluntarily altered its own laws, the specialized exception for voluntary cessation applies. City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."). This exception, however, is merely a specialized form of the general exception discussed above and provides no basis for retaining jurisdiction in the present case. "[T]he standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'a case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Young v. Hayes, 218 F.3d 850, 852 (8th Cir. 2000) (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)). As explained above, there is no basis on which to conclude that the challenged behavior–mandatory immunization against Hepatitis B without the availability of an exemption–might reasonably be expected to recur.

Finally, we reject the Schoolchildren's new challenges to the procedural requirements of the amended legislation and the accompanying implementing regulations. These requirements include an annual exemption application, submission of a notorized statement to request the exemption, completion of an educational component that "includes information on the risks and benefits of vaccination," submission of a signed informed consent statement regarding refusal to vaccinate, and submission of a signed statement authorizing the Department of Health to exclude non-immunized children from school during the presence of an outbreak of a covered disease. See Ark.Code Ann. §6-18-702(4)(A) (2003). The Schoolchildren conceded during the course of these proceedings that a state may exercise its police power to exclude non-immunized children from public schools during an actual emergency, such as an outbreak. Further, none of the procedural requirements of the amended statute and new regulations empowers Officials to assess the merits of the Schoolchildren's beliefs, and the requirements for religious objectors mirror those for philosophical objectors. Finally, the basis of their challenges to the educational components and application requirements are not entirely clear as these requirements apply equally to philosophical objectors as well as religious objectors.

We need not resolve these challenges, however, because any challenges to the procedural requirements are not yet ripe. To the extent the Schoolchildren challenge the educational component or other aspects of the application process under the new exemption, their claims are speculative and involve no concrete injury–no Schoolchildren have applied for nor been denied exemption under the new statute. The purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbot Labs. v. Gardner, 387 U.S. 136, 148-49 (1967). Were we to address the newly enacted exemption statute and regulations before first giving the Department of Health the opportunity to work with the

Schoolchildren, we would inappropriately and prematurely entangle the court in an abstract disagreement.

In Case Nos. 02-3035, 02-3094, 02-3104, and 02-3195 we dismiss all pending claims as moot and all newly raised challenges as unripe for review.

_____