# United States Court of Appeals

## For the Eighth Circuit

_____

Nos. 12-2413, 12-2418

_____

Ron Teague and Kathy Teague, on behalf of minor children T.T. and S.T.; Rhonda Richardson, on behalf of minor child A.R.

*Plaintiffs - Appellants / Cross-Appellees*

v.

Jim Cooper, in his official capacity, et al.

*Defendants - Appellees / Cross-Appellants*

Arkansas Board of Education, et al.

*Defendants - Appellees*

Camden Fairview School District No. 16 of Ouachita County; El Dorado School District #15, Union County, AR

*Intervenors below - Appellees / Cross-Appellants*

_____

Appeals from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: January 16, 2013
Filed: July 25, 2013

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

In the summer of 2010, Ron and Kathy Teague and Rhonda Richardson ("the Parents") applied to transfer their school-age children, who are white, from the racially heterogenous Malvern Public School District to the neighboring, majority-white Magnet Cove Public School District, pursuant to the Arkansas Public School Choice Act of 1989, Ark. Code Ann. § 6-18-206 ("the 1989 Act"). The applications were denied based on the race-related limitation in § 6-18-206(f)(1):

> (f) The provisions of this section and all student choice options created in this section are subject to the following limitations:
>
> (1) No student may transfer to a nonresident district where the percentage of enrollment for the student's race exceeds that percentage in the student's resident district.

(This limitation was subject to exceptions not here at issue.) The Parents commenced this action against Magnet Cove School District, the Arkansas Board of Education, the Arkansas Department of Education, and several board members (collectively, "the Educators"), seeking a declaratory judgment that section (f)(1) violates the Equal Protection Clause and an injunction transferring their children to the Magnet Cove School District. The Camden Fairview School District and the El Dorado School District as intervenors in the district court, and the Little Rock School District as amicus curiae on appeal, appeared to support the constitutionality of section (f)(1).

Applying the Supreme Court's fractured decision in Parents Involved in Community Schools v. Seattle School District Number 1, 551 U.S. 701 (2007), to the "complicated history" of equal-opportunity education in Arkansas, the district court[1] concluded that section (f)(1)'s racial limitation cannot survive the required strict

---

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

scrutiny because its "blanket rule on inter-district transfers based solely on [racial] percentages" was not narrowly tailored to serve a compelling government interest. However, applying state law, the court further concluded that section (f)(1) is not severable from the remainder of the 1989 Act. Accordingly, the court declared § 6-18-206 "unconstitutional in its entirety" and, for this reason, denied the Parents' request for injunctive relief transferring their children. The Parents and the Educators cross-appealed this ruling; the district court stayed enforcement of its judgment pending the appeals.

After the appeals were briefed and argued, the Arkansas General Assembly enacted the Public School Choice Act of 2013 ("the 2013 Act"). Act 1227, 2013 Ark. Acts 1227 (Apr. 16, 2013), codified at Ark. Code Ann. §§ 6-18-1901 *et seq*. The 2013 Act repealed the 1989 Act in its entirety, replacing it with a similarly broad school choice transfer option without section (f)(1)'s categorical race-based limitation. In providing that the 2013 Act would be effective on the date of its approval by the Governor, the General Assembly found:

> that certain provisions of the Arkansas Public School Choice Act of 1989, § 6-18-206, have been found to be unconstitutional by a federal court; that thousands of public school students are currently attending public schools in nonresident school districts under that law; that there is now uncertainty about the viability of those transfers and future transfers; that this act repeals the disputed provisions of that law while preserving the opportunity for public school choice; and that this act is immediately necessary to resolve the uncertainty in the law before the 2013-2014 school year and preserve existing student transfers.

Act 1227, § 7. We asked the parties to address whether the repeal of the challenged law moots the Parents' lawsuit. After reviewing the parties' supplemental briefs and responses, we conclude that it does. Therefore, we vacate the decision of the district court and remand with instructions to dismiss the Parents' complaint as moot.

Article III of the Constitution grants federal courts the power to hear "Cases" and "Controversies." This "requirement subsists through all stages of federal judicial proceedings, trial and appellate." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). "A case becomes moot -- and therefore no longer a 'Case' or 'Controversy' for purposes of Article III -- when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 133 S. Ct. 721, 726 (2013) (quotation omitted). Thus, we will dismiss as moot a case in which "changed circumstances [have] already provide[d] the requested relief and eliminate[d] the need for court action." McCarthy v. Ozark Sch. Dist., 359 F.3d 1029, 1035 (8th Cir. 2004).

In this case, the Parents sought a declaratory judgment that section 6-18-206(f)(1) of the Arkansas Code violates the Equal Protection Clause of the Fourteenth Amendment and prospective injunctive relief. That statute, indeed the entire 1989 Act, was unconditionally repealed by the 2013 Act. "When a law has been amended or repealed, actions seeking declaratory or injunctive relief for earlier versions are generally moot." Phelps-Roper v. City of Manchester, 697 F.3d 678, 687 (8th Cir. 2012) (en banc); accord Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1329 (11th Cir. 2004), and cases cited. In their supplemental briefs, the Educators argue the case is moot. The Parents concede their claim for injunctive relief is moot but argue the 2013 Act did not entirely moot their claim for declaratory relief for two distinct reasons.

First, the Parents argue that, although the 2013 Act "repeals the overt race provisions of section (f)(1) . . . it carries forward the question of race in school transfers in a subtle and complex way" by providing:

(b)(1) A school district annually may declare an exemption under this section if the school district is subject to the desegregation order or mandate of a federal court or agency remedying the effects of past racial segregation.

-4-

Ark. Code Ann. § 6-18-1906(b)(1). The Parents assert that amicus Little Rock and intervenors El Dorado and Camden-Fairview school districts all seek that exemption, demonstrating that "at that local level the legal debate recurs in almost exactly the same terms as presented on the merits of this appeal."

This feature of the 2013 Act does not make the Parents' lawsuit any less moot because the Parents no longer have the requisite "personal stake" in the lawsuit, even taking into account the new exemption process. Lewis, 494 U.S. at 478. In their supplemental brief, the Parents argued that the remedy they seek in the lawsuit is not moot because an injunction ordering their children transferred pursuant to their 2010 applications would be greater relief than they could obtain under the 2013 Act. The Educators then submitted documents showing that the Parents applied for transfers under the 2013 Act, and their applications were approved. Unlike the 1989 Act, the 2013 Act expressly provides that "[a] transfer student attending a nonresident school under this subchapter may complete all remaining school years at the nonresident district." § 6-18-1904(c)(1). Thus, as the Parents later conceded, the 2013 Act affords their children the full prospective relief they seek in the lawsuit. In these circumstances, the claims are moot because the Parents are "no longer in need of any protection from the challenged practice." Camreta v. Greene, 131 S. Ct. 2020, 2034 (2011). As in Coleman v. Lyng, 864 F.2d 604, 611 (8th Cir. 1988), the General Assembly's "obvious intent" was that the 2013 Act would remedy the Parents' grievances that prompted this case.[2]

---

[2]We note that exemptions under the 2013 Act are limited to individual school districts that are subject to federal desegregation mandates, a regime totally unlike the statutory race-based limitation in section (f)(1) of the 1989 Act. Under Parents Involved, equal protection challenges to the 2013 Act would be subject to a very different analysis than the district court applied in invalidating section (f)(1). See 551 U.S. at 793-96 (Kennedy, J., concurring). Moreover, the challenges would be to individual school district claims of exemption under the 2013 Act, not to a statewide statutory limitation on school transfers based solely on racial factors.

Second, the Parents invoke the well-established principle "that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" unless "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 & n.10 (1982) (citation omitted); see Ne. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 661-62 (1993). By its terms, the 2013 Act expires in 2015, § 6-18-1909, when the Arkansas General Assembly next meets in regular session, see Ark. Const. art. V § 5(b). The Parents argue the 2015 expiration establishes that the 2013 Act is a stop-gap; unless we rule on the merits of these appeals, the General Assembly will be free to return to employing race-based limits on public school transfers when it revisits the issue in 2015.

As a general matter, we agree with the Fourth Circuit "that statutory changes that discontinue a challenged practice are usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." Valero Terrestrial Corp. v. Paige, 211 F.3d 112, 116 (4th Cir. 2000); see McCarthy, 359 F.3d at 1036-37. "The exceptions to this general line of holdings are rare and typically involve situations where it is virtually certain that the repealed law will be reenacted." Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1510 (9th Cir. 1994), citing City of Mesquite, 455 U.S. at 289.

In this case, we share the Parents' view that the 2013 Act's expiration almost guarantees the General Assembly will revisit the issue of public school choice in 2015. But we see no indication it intends to reenact a statewide, exclusively race-based limitation. Indeed, all objective legislative signals are to the contrary. The General Assembly moved toward eliminating section (f)(1) even before the district court's ruling in this case. In 2011, the Senate passed a bill that removed section (f)(1)'s racial limitation, but the General Assembly adjourned before the House of Representatives acted. See S.B. 914, 88th Gen. Ass., § 4 (Ark. 2011). In

enacting the 2013 Act this year -- by votes of 54 to 8 in the House of Representatives and 32 to 1 in the Senate -- the General Assembly expressly found that the "benefits of enhanced quality and effectiveness in our public schools justify permitting a student to apply for admission to a school in any school district" provided the transfer does not conflict with a court order "remedying the effects of past racial segregation in the school district."  § 6-18-1901(b)(3).  By rewriting the entire statute and eliminating all explicitly race-based limits on school transfers, the General Assembly evidenced an intent to move away from this constitutionally sensitive issue so as to preserve the benefits of school choice.  Compare Kansas Judicial Review v. Stout, 562 F.3d 1240, 1246 (10th Cir. 2009); Zessar v. Keith, 536 F.3d 788, 794-95 (7th Cir. 2008).  This was not the action of a legislative body seeking to "moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect."  Associated Gen. Contractors, 508 U.S. at 662.

In enacting the 2013 Act on an emergency basis, "the legislature acted quickly for the benefit of the [Parents] and other citizens of Arkansas to replace the stricken [Public School Choice Act] with a[ statute] it believed would pass constitutional muster."  McCarthy, 359 F.3d at 1036.  Without question, the General Assembly will need to address these difficult issues again in 2015 if it decides to enact a new statute extending the perceived benefits of broadly available public school transfers.  But there is no reason to believe the General Assembly will simply reinstate section (f)(1) of the 1989 Act.  Rather, as judges, we must assume the General Assembly will properly perform its legislative duty by taking into account the diverse political views of its interested Arkansas constituents -- parents, students, educators, and others -- and by weighing relevant constitutional decisions such as Parents Involved, in fashioning a new law that will then be subject to judicial review.  "There is no evidence here that the State intends to reenact the repealed statute, nor that any such legislative action could evade review."  Epp v. Kerrey, 964 F.2d 754, 755 (8th Cir. 1992).  In these circumstances, the "voluntary cessation" exception to mootness does not apply

because "the allegedly wrongful behavior could not reasonably be expected to recur." City of Mesquite, 455 U.S. at 289 n.10.

For these reasons, the Parents' claims for declaratory and injunctive relief are moot. As is our normal practice when a case has been rendered moot by events outside the parties' control, we vacate the decision of the district court and remand the case with directions that it be dismissed. See United States v. Munsingwear, 340 U.S. 36, 39-40 (1950). "The point of vacatur is to prevent an unreviewable decision from spawning any legal consequences, so that no party is harmed by what we have called a preliminary adjudication." Camreta, 131 S. Ct. at 2035 (quotation omitted). The Parents argue that we should instead apply the rule "that mootness by reason of settlement does not justify vacatur." U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 29 (1994). This contention is without merit. See Valero, 211 F.3d at 121.

The Memorandum Opinion and Order and the Judgment of the district court dated June 8, 2012, are vacated, and the case is remanded with directions to dismiss the Parents' complaint as moot.

_____