# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1222

_____

B.W.C.; J.R.; Mykala N. Martin; Brian Robinson; Michael W. Cheek; I.E.G.M.; Linda D. Cheek; Amber Robinson; W.B., a minor, by and through his parents and next of friends; Zach Baker, Individually; Audrey Baker, Individually

*Plaintiffs - Appellants*

v.

Randall Williams, Director of the Missouri Department of Health & Senior Services; Clever R-V School District; Miller County R-III School District; Bobbie Grant, in his individual capacity; Christina Stamper, in her individual capacity; Crossroads Academy-Central Street; Karis Parker, in her individual capacity; Eva Copeland, in her individual capacity; Eric S. Schmitt, in his official capacity as Missouri Attorney General

*Defendants - Appellees*

_____

No. 20-2207

_____

G.B., a minor, by and through their parents and next friends, Zach Baker and Audrey Baker; J.B., a minor, by and through their parents and next friends, Zach Baker and Audrey Baker; W.B., a minor, by and through their parents and next friends, Zach Baker and Audrey Baker; Zach Baker, individually; Audrey Baker, individually

*Plaintiffs - Appellants*

v.

Crossroads Academy-Central Street; Karis Parker, in her individual capacity; Eva Copeland, in her individual capacity; Dr. Rex Archer, in his official capacity, as Director of the City of Kansas City, Missouri Health Department; Bridgette Casey, in her official capacity, as Director of the Jackson County Health Department, governed and operated by the Truman Medical Center Board; Randall Williams, in his official capacity, as Director for the Missouri Department of Heath & Senior Services; Eric S. Schmitt, in his official capacity as Missouri Attorney General

*Defendants - Appellees*

———————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

———————

Submitted: January 12, 2021
Filed: March 5, 2021

———————

Before GRUENDER, BENTON, and STRAS, Circuit Judges.

———————

BENTON, Circuit Judge.

Plaintiffs challenge Missouri's form to claim a religious exemption from mandatory immunizations for school children, as violations of their First and Fourteenth Amendment rights. The district court[1] dismissed all claims. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

Plaintiffs are children enrolled or seeking to reenroll in Missouri public schools (and their parents).[2] Plaintiffs have sincere religious objections to

---

[1] The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

[2] B.W.C. graduated before oral argument, so his case is moot. ***Steele v. Van Buren Pub. Sch. Dist.***, 845 F.2d 1492, 1495 (8th Cir. 1988). B.W.C. and his parents,

-2-

immunization. The school children were notified they could not attend school if they did not file their religious objections on a specific form, Missouri Department of Health and Senior Services Form 11. *See* **19 C.S.R. § 20-28.010(1)(C)(2)**.[3] Plaintiffs refused to file it. Instead, some filed a separate statement of their objections to immunization. The Baker children were disenrolled from school until they filed the form. *See* **§ 167.181.2, RSMo 2016** ("It is unlawful for any student to attend school unless he has been immunized as required under the rules and regulations of the department of health and senior services."); **19 C.S.R. § 20-28.010(1)(A)** ("Students cannot attend school unless they are properly immunized and can provide satisfactory evidence of the immunization or unless they are exempted.").

Form 11 has two parts: first, a DHSS message to parents about the exemption; second, a parent's election of religious exemption, along with a checklist of the immunizations the child refuses for religious reasons (including an "other" category). Plaintiffs do not challenge the exemption's scope. *See* **§ 167.181.2-.3, RSMo 2016**. Instead, they object to signing Form 11 because of DHSS's message on the top of the form. The entire text of this message says:

> We strongly encourage you to immunize your child, but ultimately the decision is yours. Please discuss any concerns you have with a trusted healthcare provider or call the immunization coordinator at your local or state health department. Your final decision affects not only the health of your child, but also the rest of your family, the health of your child's friends and their families, classmates, neighbors, and community. Unimmunized children have a greater risk of contracting and spreading vaccine-preventable diseases to babies who are too young to be fully immunized due to medical conditions. In the event of

---

Michael W. and Linda D. Cheek, thus no longer have standing. ***Schanou v. Lancaster Cty. Sch. Dist. No. 160***, 62 F.3d 1040, 1042-43 (8th Cir. 1995).

[3]*Authorized by* **§ 167.181.1-.2, RSMo 2016**, *approved in* ***G.B. v. Crossroads Acad.-Cent. St.***, No. WD 83756, 2020 WL 7221558, at \*6 (Mo. App. Dec. 8, 2020), *reh'g and/or transfer denied* (Feb. 2, 2021).

an outbreak of a vaccine-preventable disease within a particular facility, children who are not fully immunized or do not have documented laboratory evidence of immunity shall not be allowed to attend school or day care until the local health authority declares the designated outbreak or health emergency has ended.

Department of Health and Senior Services, *Religious Immunization Exemption*, accessed on January 27, 2021, https://health.mo.gov/living/wellness/immunizations/pdf/Immp11a.pdf. To get an official copy of the form requires either requesting a copy by phone or mail or going in-person to a DHSS or county health office (where plaintiffs fear subjection to forced education sessions about vaccines). *See* **19 C.S.R. § 20-28.010(1)(C)(2)** ("The Imm.P.11A form . . . may be obtained by contacting a medical provider, local public health agency, or the department's Bureau of Immunization Assessment and Assurance at PO Box 570, Jefferson City, MO 65102-0570, or by calling 800-219-3224.").

The plaintiffs claim that the Form 11 and "vaccine education" violate their rights to free speech (or unconstitutionally conditions their speech), free religious exercise, and equal protection, along with a hybrid rights claim. "We review de novo the district court's decision to dismiss plaintiffs' complaint." *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007).

I.

The plaintiffs argue Form 11 compels their speech and thus is unconstitutional. "[F]reedom of speech prohibits the government from telling people what they must say." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006). "[T]he government may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit." *Id.* at 59. It is unconstitutional to require "schoolchildren to recite the Pledge of Allegiance and to salute the flag." *Id.*, *citing West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943). The Court "held

-4-

unconstitutional another [law] that required New Hampshire motorists to display the state motto—'Live Free or Die'—on their license plates." *Id.*, *citing* ***Wooley v. Maynard***, 430 U.S. 705, 717, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (brackets added). In those two cases there was "a Government-mandated pledge or motto that the school [or driver] must endorse." *Id.* at 62 (brackets added). "The right to eschew association for expressive purposes is likewise protected." ***Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31***, 138 S. Ct. 2448, 2463 (2018). "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." ***Barnette***, 319 U.S. at 642. "[T]he speaker has the right to tailor the speech, [which] applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid." ***Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.***, 515 U.S. 557, 573 (1995) (brackets added), *distinguished by* ***Agency for Int'l Dev. v. All. for Open Int'l Soc'y, Inc. ("USAID")***, 140 S. Ct. 2082, 2088 (2020) (describing *Hurley* as a case "involving speech misattribution between formally distinct speakers"). If a speaker acts identifiably as a conduit for the message of another, then intermediate scrutiny attaches. *See* ***Turner Broadcasting System, Inc. v. FCC***, 512 U.S. 622, 655-56 (1994). A content-neutral regulation is constitutional if "it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* at 662, *citing* ***United States v. O'Brien***, 391 U.S. 367, 377 (1968).

Form 11 does not require the plaintiffs to *affiliate* with DHSS's immunization statement. *See* ***USAID***, 140 S. Ct. at 2088 (holding that USAID was "not forcing plaintiffs to affiliate" with the agency's anti-prostitution pledge). Instead, Form 11 states the government's position, separated from the religious opt-out. Unlike a student required to recite the Pledge or a motorist required to display the state's motto, there is no confusion here: it is the government's message to parents considering Form 11. ***Pleasant Grove City v. Summum***, 555 U.S. 460, 467 (2009)

("A government entity has the right to speak for itself. It is entitled to say what it wishes, and to select the views that it wants to express." (cleaned up)). There is "little risk" recipients of the form would believe that parents opting out were affiliating with the government's request *not* to opt out. *See **Turner***, 512 U.S. at 656. There is also "little risk" recipients would believe that the parents were compelled to "mouth support for views they find objectionable," *Janus*, 138 S. Ct. at 2463, or "'pledge allegiance' to a state-sponsored message." *USAID*, 140 S. Ct. at 2091 (Breyer, J., dissenting).

Plaintiffs' position that Form 11 compels them to state the government's position does not match the structure or wording of the form. The DHSS message refers to "you" and "your," directing its message to the parents using the second-person. School officials receiving the form would know they are not the ones making the decision for "your child." The bold line separating the DHSS message and the opt-out confirms this.

Plaintiffs argue, at length, that Form 11 precludes them from speaking their objections to immunization in another manner. Nothing in Missouri's law or regulations precludes submitting *additional* statements of religious objection. *See* **19 C.S.R. § 20-28.010(1)(C)(2)**. The Bakers' school, for instance, did not decline their submission of their religious objection; instead, they required Form 11 *in addition to* the Bakers' statement. Form 11 is thus a required administrative floor for exemption that does not ban other communication between parents and their child's school. Since Form 11 does not compel speech, restrict speech, or incidentally burden speech, Form 11 does not violate plaintiffs' free speech rights.

II.

Plaintiffs argue Form 11 abridges the free exercise of their religion. "[T]he right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." ***Employment***

***Div. v. Smith***, 494 U.S. 872, 879 (1990) (quotation omitted).  Religious exercise is not burdened unless "compliance cause[s] the objecting party to violate its religious beliefs, as it sincerely understands them[.]"  ***Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania***, 140 S. Ct. 2367, 2389 (2020) (Alito, J., concurring) (brackets added), *citing* ***Burwell v. Hobby Lobby***, 573 U.S. 682, 723-26 (2014).  In *Little Sisters of the Poor* the Court considered "submission of the self-certification form required by the accommodation because without that certification their plan could not be used to provide contraceptive coverage."  ***Id.*** at 2391.  Since submission of the opt-out form triggered contraception coverage for employees, the Little Sisters saw filing the form as moral complicity.  ***Id.***

A.

Form 11 does not require the plaintiffs to engage in conduct against their religious beliefs.  Plaintiffs object to the process of *producing* vaccines or *introducing* vaccines into their children's bodies.  Unlike *Little Sisters of the Poor*, submission of Form 11 does not increase the number of vaccines produced or force their children to get immunized.  Unlike the Little Sisters' objection to triggering the apparatus of securing contraception, Form 11 does not make plaintiffs morally complicit in the production or use of vaccinations.

Form 11 tries to inform parents before they consent to opt out.  "[I]nformed-consent laws . . . serve the legitimate purpose of reducing the risk that a [person] may elect [a procedure], only to discover later, with devastating psychological consequences, that her decision was not fully informed."  ***Doe v. Parson***, 960 F.3d 1115, 1119 (8th Cir. 2020) (brackets added).  *See* **§ 192.072.1-.2, RSMo 2016** ("[T]he department of health and senior services shall develop educational materials which strongly recommend . . . vaccines . . . and shall include information regarding possible risks and benefits and requirements regarding informed consent associated with childhood vaccines, which shall be provided to parents or legal guardians of the child.").

As in *Doe*, Form 11 communicates neutrally to anyone considering opting out on religious grounds that the government discourages it, but "the ultimate decision is yours"—the parents'. The form states the government's neutral and generally applicable position that immunization prevents childhood diseases, and thus should be required for school attendance.

B.

Plaintiffs do not plead specific facts about forced immunization education. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs do not claim *their* county of residence has a vaccine education requirement; their pleadings allege only examples from other (non-party) counties.

Even if the plaintiffs were correct that they would have to listen to pro-immunization messages from DHSS, their claim would be foreclosed by *Rounds*: "[W]hile the State cannot compel an individual simply to speak the State's ideological message, it can use its regulatory authority to require a physician to provide truthful, non-misleading information relevant to a patient's decision to have an abortion, even if that information might also encourage the patient to choose childbirth over abortion." *Planned Parenthood v. Rounds*, 530 F.3d 724, 734–35 (8th Cir. 2008) (en banc). "[I]f the physician may completely disassociate himself or herself from the state's ideological message, then the physician's compelled speech rights are not implicated." *Id.* at 736.

Just as the state may use its regulatory authority to require a physician to provide truthful information relevant to a patient's decision to have an abortion, the state could also require county health officials to provide truthful information relevant to a parent's decision to decline immunizations.

C.

Plaintiffs also argue that Form 11 targets religious people and violates their right to equal protection. "In determining if the object of a law is a neutral one under the Free Exercise Clause, we can also find guidance in our equal protection cases. . . . neutrality in its application requires an equal protection mode of analysis." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993) (quotation omitted). "When otherwise eligible recipients are disqualified from a public benefit solely because of their religious character, we must apply strict scrutiny." *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2260 (2020) (quotation omitted). The Court has "long recognized the rights of parents to direct the religious upbringing" of their children." *Id.* at 2261. State law cannot "penalize[] [those] decision[s] by cutting families off from otherwise available benefits [because of religion], and for no other reason." *Id.* (brackets added).

Form 11 does not target religious believers or violate their right to equal protection.[4] The defendants do not treat the plaintiffs differently than any other parent requesting an exemption from immunization: they were all required to submit a DHSS form to their school. *See* **19 C.S.R. § 20-28.010(1)(C)(1)** ("Medical Exemption . . . The exemption shall be provided on an original Department of Health and Senior Services' form Imm.P.12 and shall be placed on file with the school."). Unlike *Espinoza*, where a school's religious status automatically disqualified Montana students from scholarships, Missouri allows parents to practice their religion while also sending their children to school. The defendants did not specifically target plaintiffs for unequal treatment.

---

[4]Plaintiffs claim expulsion violates equal protection and exceeds the scope of statutory authority. This is wrong. **§ 167.181.1-.2** (making it "unlawful" for immunization noncompliant students to attend without an exemption); **19 C.S.R. § 20-28.010(1)(C)(2)** (prescribing the process for submitting written exemption).

-9-

III.

Plaintiffs argue they have asserted a "hybrid right" that requires strict scrutiny. "The Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech, can bar application of a neutral, generally applicable law." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 759 (8th Cir. 2019) (cleaned up). Strict scrutiny applies to hybrid rights claims. *Id.* at 760. Nevertheless, this court previously expressed skepticism about application of hybrid rights analysis in a mandatory vaccination case because Arkansas did not even consider "the merits of the Schoolchildren's beliefs." *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1033 (8th Cir. 2004). This lack of individual consideration typifies valid programs. *See Smith*, 494 U.S. at 884 (valid programs do not consider a person's "particular circumstances").

Plaintiffs have not stated a hybrid rights claim. Plaintiffs attempt to mix-and-match rights to free speech, free exercise of religion, equal protection, bodily integrity, educational due process,[5] and to direct the upbringing of their children.[6] Each of these claims fails on its own, so this case in not in "the class of hybrid situations in which the Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech, can bar application of a neutral, generally

---

[5]The Bakers' school provided clear written notice of the violation and met with the parents well in advance of its decision to disenroll their children, which satisfies due process. *See Goss v. Lopez*, 419 U.S. 565, 580 (1975).

[6]"[N]either rights of religion nor rights of parenthood are beyond limitation. . . . Thus, [a parent] cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds. The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944) (brackets added).

applicable law." ***Lucero***, 936 F.3d at 759 (cleaned up). The district court correctly dismissed any hybrid rights claim.[7]

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

---

[7]As demonstrated, there is no constitutional violation to form the basis of plaintiffs' 42 U.S.C. § 1983 claim, much less a "likely violation." ***See Rodgers v. Bryant***, 942 F.3d 451, 456 (8th Cir. 2019). Injunctive relief is also inappropriate.