UNITED STATES of America, Plaintiff–Appellee,

v.

Shane Arthur JAMES, Defendant–Appellant.

No. 91–30238.

United States Court of Appeals, Ninth Circuit.

Argued July 6, 1992.

Submission Deferred July 6, 1992.

Submitted July 13, 1992.

Decided Dec. 9, 1992.

**1316**

Peter Offenbecher, Asst. Federal Public Defender, Seattle, Wash., for defendant-appellant.

Kenneth Parker and Gene Porter, Asst. U.S. Attys., Seattle, Wash., for plaintiff-appellee.

Before: ALARCON, RYMER, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Appellant Shane Arthur James ("James") appeals his conviction for rape committed on the Quinault Indian Reservation in the State of Washington. On June 29, 1990, the victim reported that James entered her home and raped her in the early morning. An indictment was filed on October 3, 1990, charging James with a single count of aggravated sexual assault on an Indian reservation in violation of 18 U.S.C. §§ 1151, 1153, and 2241(a). James was sentenced to eighty-seven months in the custody of the Attorney General and placed on five years of supervised release. We have jurisdiction of this timely appeal pursuant to 28 U.S.C. § 1291.

We hold that the indictment was sufficient to withstand a Fed.R.Crim.P. 34 challenge after the verdict and that the Quinault Indian Nation did not waive its sovereign immunity, and thus is protected from responding to the subpoena issued by the district court. The other issues of the case have been resolved in a nonpublished memorandum disposition.

INDICTMENT

James argues that the indictment was defective because it failed to state the jurisdictional fact that he was an Indian. James contends that this failure constitutes a fatal defect, thereby rendering the indictment jurisdictionally defective.

We review the sufficiency of an indictment *de novo*. *United States v. Normandeau*, 800 F.2d 953, 958 (9th Cir.1986).

An essential purpose of an indictment is to give a defendant notice of the charge so that he may defend or plead his case adequately. *Id.* Generally, the failure of an indictment to detail each element of the charged offense constitutes a fatal defect. *United States v. Keith*, 605 F.2d 462, 464 (9th Cir.1979). A claim of a defective indictment can be raised at any time, but "[c]hallenges [should] be made at the earliest possible moment.... [I]ndictments which are tardily challenged are liberally construed in favor of validity." *United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir.1976), *cert. denied, Inciso v. United States*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977). Furthermore, tardy challenges to an indictment must be "construed according to common sense." *Normandeau*, 800 F.2d at 958 (internal quotations omitted). A "minor or technical deficiency" in the indictment will not reverse a conviction if there is no prejudice. *Id.*

In *Normandeau*, we held that the indictment as a whole adequately apprised the defendant of the charges against him and was therefore legally sufficient. The defendant was convicted after a four day trial and questioned the validity of the indictment on appeal. The indictment stated that the defendant "receive[d], conceal[ed] and facilitate[d] the concealment and transportation of ... [more than] 1,000 pounds of marijuana in the form of hashish, knowing that [it] had been imported into the United States contrary to law." 800 F.2d at 958 (brackets in original). The defendant claimed that the indictment failed to specify what law the importation violated. *Id.* In *Normandeau*, we found that the "key question [as to whether an indictment is adequate] is whether an error or omission in an indictment worked to the prejudice of the accused." *Id.* If there was no prejudice, the conviction would not be reversed merely because a "minor or technical deficiency in the indictment is later discovered." *Id.* We held that the indictment had "sufficiently informed [the defen-

dant] of the nature of the ... charge so that no prejudice to him could have ensued. Absent such prejudice, the conviction may not be reversed for any omission in the indictment." *Id.*

James relies on *Hilderbrand v. United States*, 261 F.2d 354 (9th Cir.1958). Hilderbrand pleaded guilty to and was convicted of second degree murder. Apparently, the prosecution was based on 28 U.S.C. § 1153, which requires that both the defendant and the victim be Indians[1]. On appeal of the denial of his petition under 28 U.S.C. § 2255, Hilderbrand raised a claim that had not been presented below. He contended that the indictment was insufficient because it failed to allege that he was an Indian[2], and therefore, if this were true, the district court lacked jurisdiction over the case. 261 F.2d at 355. Hilderbrand argued for either a reversal based on the indictment or for the opportunity to amend his motion to allege that "neither he nor the deceased were Indians maintaining tribal relations." *Id.*

The *Hilderbrand* indictment cited only 18 U.S.C. § 1111, which merely defines the types of murder. The indictment alleged that the crime took place on an Indian reservation, but did not allege that the crime took place by an Indian against an Indian. In addition, the indictment failed to cite to any statute other than the general murder statute. Thus, we ordered the dismissal of the indictment as insufficient.

The indictment against James stated:

On or about the 29th day of June, 1990, in the Western District of Washington, within Indian country, on the Qui-

nault Indian Reservation, the defendant, Shane Arthur James, did commit an offense which is a felony under chapter 109A of Title 18, United States Code, in that he knowingly caused the victim to engage in a sexual act by using force against said [victim].

All in violation of Title 18, United States Code, Sections 1151, 1153, and 2241(a).[3]

■ The indictment should have contained allegations that James was an Indian and that the victim was an Indian. The fact that both he and the victim were Indians was established in the grand jury proceedings and at trial beyond a reasonable doubt.

■ When the sufficiency of the indictment is challenged after trial, it is only required that "the necessary facts appear in *any form* or *by fair construction* can be found within the terms of the indictment." *Kaneshiro v. United States*, 445 F.2d 1266, 1269 (9th Cir.) (internal quotations omitted) (emphasis added), *cert. denied*, 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 543 (1971). "A challenge to the sufficiency of an indictment is not a game in which the lawyer with the sharpest eye or the cleverest argument can gain reversal for his client." *United States v. Coleman*, 656 F.2d 509, 510 (9th Cir.1981) (internal quotations omitted).

In *Coleman*, the appellant claimed that the indictment failed to state that the savings and loan he robbed was federally insured. The statute cited in the indictment defined a federal crime of robbery, which included within its definition a federally

---

1. 18 U.S.C. § 1153 states in relevant part:
 Any Indian who commits against the person ... of another Indian ... any of the following offenses, namely murder, manslaughter, ... [or rape] ... within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

2. Previously, appellant had argued that the district court lacked jurisdiction because the property had been transferred out of Indian ownership to the Catholic Church, and thus there was no federal jurisdiction.

3. 18 U.S.C. § 1151(a) defines, in relevant part, Indian country as "all land within the limits of any Indian reservation under the jurisdiction of the United States Government...."

 18 U.S.C. § 2241(a) states in relevant part:
 Whoever, in the ... territorial jurisdiction of the United States ... knowingly causes another person to engage in a sexual act—
 (1) by using force against that other person; or
 (2) by threatening or placing that other person in fear ...;
 shall be fined under this title, imprisoned for any term of years or life, or both.

**1318**

insured savings and loan association. *See* 18 U.S.C. §§ 2113(a) and (g). We held that the indictment had to be liberally construed as "Coleman failed to raise any objection to it until after trial." *Coleman*, 656 F.2d at 510.

We found that Coleman could have resolved any ambiguity in the indictment prior to trial by filing an appropriate motion because the statute provided the necessary information. *Coleman*, 656 F.2d at 511. "The only issue ... is whether the indictment, *by reference to [the statute]*," alleged sufficient information to cure the deficiency. *Id.* (emphasis added). "[I]nclusion in [the indictment] of the statutory citation provide[d] a means by which a defendant [could] inform himself [or herself] of the elements of the offense." *Id.* In upholding the indictment in *Coleman*, we held that "the indictment, by reference to the statute," adequately informed the defendant of the necessary information. *Id.*

■ Similarly, in this case, the necessary elements of the crime appear in the indictment by reference to the relevant statutes. James could have easily resolved any problems in the indictment by filing an appropriate motion prior to trial. Applying the liberal standard of review to an indictment challenged after the conclusion of the trial, we hold that the indictment, by including reference to the statute, adequately informed James the status as Indians of both himself and the victim.

■ When the indictment is questioned *prior* to trial, reference to a statute cannot cure a defect in the indictment where it fails to allege the elements of the crime. *United States v. Kurka*, 818 F.2d 1427, 1431 (9th Cir.1987) [4]. In *Kurka*, the defendant moved to dismiss the indictment on the ground that it failed to allege that the damage to the property was willful. The

district court denied the motion. *Id.* at 1428. The failure to include the element was held to render the indictment defective. It was also noted that the erroneous interpretation persisted throughout the trial. *Id.* at 1431.

■ Where an indictment is questioned post trial, reference to a statute will cure some defects, as in *Coleman* and here. But the defendant must have been given adequate knowledge of the missing elements in order to satisfy the due process requirement; otherwise, reference to a statute will not cure the defect in the indictment. *See Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir.1986) (the information's citation to a statute which merely defined the degrees of murder, identifying murder by torture as one type of first degree murder, did not provide the defendant adequate notice of the specific charge of first degree murder by torture).

The present case differs from *Kurka* in that James was aware of all of the elements to be proven at trial. The Government provided James with a copy of the grand jury proceedings which included the testimony of an agent of the Federal Bureau of Investigation who testified to the fact that both James and the victim were enrolled Indians, and that the crime occurred on an Indian reservation. These facts were never contested by James and were proven again at trial beyond a reasonable doubt.

[S]ocietal costs of reversal and retrial are an acceptable and often necessary consequence when an error in the first proceeding has deprived a defendant of a fair determination of the issue of guilt or innocence. But the balance of interests tips decidedly the other way when an error *has no effect* on the outcome of the trial.

---

4. *See also United States v. Broncheau*, 597 F.2d 1260 (9th Cir.), *cert. denied*, 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979). Broncheau was indicted for assault resulting in serious bodily injury of a non-Indian within Indian country, in violation of 18 U.S.C. §§ 1153 and 113(f). Broncheau moved to dismiss the indictment prior to trial. We held that the indictment was sufficient because "it closely follow[ed] the lan-

guage of the statute." 597 F.2d at 1262. We found that "the indictment may be construed to include facts necessarily implied by the allegations. The purpose of an indictment was served here. Broncheau had adequate notice of his classification as an Indian." *Id.* at 1263. No further refinement was necessary for purposes of the indictment. All of the elements of the crime were present.

*United States v. Mechanik,* 475 U.S. 66, 72, 106 S.Ct. 938, 943, 89 L.Ed.2d 50 (1986) (emphasis added). The facts presented at trial conclusively proved that both James and the victim were enrolled Indians within the meaning of section 1153, and that the crime took place on an Indian reservation. It is inconceivable that James would have presented a different defense if the indictment had been corrected. James was not prejudiced by the indictment's failure to state that he was an Indian. The error in the indictment could have had no effect on the outcome of the trial and was harmless beyond a reasonable doubt.

## SUBPOENA TO QUINAULT INDIAN NATION

James contends that the district court erred in quashing the subpoena to the Quinault Indian Nation based upon sovereign immunity. The district court had issued a subpoena *duces tecum* and an order to produce documents directed toward Richard Marinez, Director of Social Services of the Quinault Indian Nation. James was requesting documents related to the victim's alleged alcohol and drug problems which were in the possession of the Quinault Indian Nation Department of Social and Health Services. On motion by the Quinault Indian Nation, the district court quashed the subpoena based on tribal immunity.

James makes two related arguments concerning Quinault tribal immunity. First, he argues the tribe's immunity does not protect it from complying with a valid subpoena from a federal district court. In essence, he is saying the Quinault Tribe has no immunity in this case. Second, he contends that if tribal immunity did exist, the Tribe waived it by voluntarily supplying documents to the United States. Those documents were from the records of the Tribal Housing Authority and related to disturbances resulting from the victim's occupancy of a Housing Authority residential unit.

 We review the issue of whether a tribe has sovereign immunity *de novo*. *Burlington N. R.R. Co. v. Blackfeet Tribe,* 924 F.2d 899, 901 (9th Cir.1991), *cert. de-*

*nied,* —— U.S. ——, 112 S.Ct. 3013, 120 L.Ed.2d 887 (1992).

 It is clear that Indian tribes' immunity from suit remains intact "absent express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress." *Id.* Section 1153(a) does not provide an "express and unequivocal waiver of immunity." Tribal immunity is just that: sovereign immunity which attaches to a tribe because of its status as a dependent domestic nation. *See United States v. Wheeler,* 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978). Tribal immunity does not extend to the individual members of the tribe. *See Puyallup Tribe, Inc. v. Washington Game Dept.,* 433 U.S. 165, 173, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977). By making individual Indians subject to federal prosecution for certain crimes, Congress did not address implicitly, much less explicitly, the amenability of the tribes to the processes of the court in which the prosecution is commenced. Thus, we conclude that the Quinault Tribe was possessed of tribal immunity at the time the subpoena was served, unless the immunity had been waived.

In addition, the Supreme Court in *United States v. Nordic Village, Inc.,* —— U.S. ——, ——, 112 S.Ct. 1011, 1017, 117 L.Ed.2d 181 (1992), rejected the notion that 28 U.S.C. § 1362, "a jurisdictional grant, akin to § 1334(d), that gives district courts jurisdiction over 'all civil actions, brought by any Indian tribe ... aris[ing] under the Constitution, laws, or treaties of the United States,' " abrogated the States' Eleventh Amendment immunity. " 'The fact that Congress grants jurisdiction to hear a claim does not suffice to show Congress has abrogated all defenses to that claim. The issues are wholly distinct.' " *Id.* —— U.S. at ——, 112 S.Ct. at 1017 (quoting *Blatchford v. Native Village of Noatak,* —— U.S. ——, —— n. 4, 111 S.Ct. 2578, 2585, n. 4, 115 L.Ed.2d 686 (1991). Thus, the mere fact that a statute, 18 U.S.C. § 1153(a), grants jurisdiction to a federal court does not automatically abrogate the Indian tribe's sovereign immunity.

██ Whether the Quinault tribe waived its immunity as an uninvolved witness is an issue of first impression in this Circuit. The cases where we have addressed waiver involve situations where the Indian tribe was a party to the lawsuit. *McClendon v. United States*, 885 F.2d 627 (9th Cir.1989); *Snow v. Quinault Indian Nation*, 709 F.2d 1319 (9th Cir.1983), *cert. denied*, 467 U.S. 1214, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1984). In the present case, however, the tribe is the holder of possibly relevant documents.

As stated above, the Quinault Indian Nation was entitled to a claim of sovereign immunity. However, it expressly waived its immunity as to relevant documents in the possession of the Housing Authority by voluntarily providing the Government with documents relevant to the case. The Quinault Indian Nation cannot selectively provide documents and then hide behind a claim of sovereign immunity when the defense requests different documents from the same agency.

The Quinault Indian Nation did not explicitly waive its sovereign immunity to documents from different agencies when it volunteered the Housing Authority documents. The Quinault Indian Nation has a different interest in the documents from the Department of Social and Health Services than in documents from the Housing Authority. Although the Housing Authority documents refer to problems of the victim and to counseling she received, the substantive reports regarding counseling and more detailed descriptions of problems are located in the records of the Department of Social and Health Services. There is an increased privacy interest on the part of tribal members in documents which detail emotional, mental, or physical problems of tribal members, more so than in documents which only refer to such problems in a general way. The tribal interest arises in protecting the details of the counseling from disclosure in order to promote free communication by tribal members needing those services.

The fact that the tribe voluntarily gave documents located in the Housing Authority files, which do not provide details of the problems of the individual, did not indicate an intent to release all documents in the possession of the different tribal agencies. The tribe did not expressly waive its immunity in the Social and Health Service documents. The district court was correct in quashing the subpoena.

AFFIRMED.