# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1520

_____

| | | |
|---|---|---|
| Alltel Communications, LLC, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Eugene DeJordy, | * | District Court for the |
| | * | District of South Dakota. |
| Defendant, | * | |
| | * | |
| Oglala Sioux Tribe; Joseph Red Cloud, | * | |
| | * | |
| Interested Parties - Appellants, | * | |

_____

Submitted:  December 13, 2011
Filed: April 4, 2012 (**Corrected 4/6/12**)

_____

Before LOKEN, MURPHY, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

Alltel Communications ("Alltel") sued a former senior vice president, attorney Eugene DeJordy, in the Eastern District of Arkansas, alleging that DeJordy breached the terms of a Separation Agreement by, *inter alia*, assisting the Oglala Sioux Tribe in a tribal court lawsuit to enjoin Alltel from a proposed sale of assets that provide telecommunications services on the Pine Ridge Indian Reservation.  In the Arkansas action, Alltel served District of South Dakota third-party subpoenas *duces tecum* on

the Tribe and Joseph Red Cloud, a tribal Administrator who represents the Tribe in telecommunications matters. The subpoenas seek production of any documents that might establish a connection between DeJordy and the Tribe's lawsuit against Alltel. Following a hearing, the district court denied the Tribe's motion to quash based on tribal immunity and ordered the subpoenaed non-parties to deliver requested documents for in camera review. The Tribe and Red Cloud then filed this interlocutory appeal under the collateral order doctrine and 28 U.S.C. § 1292(b).[1] The only issue is whether tribal immunity bars enforcement of the subpoenas, an issue we review *de novo*. See Rupp v. Omaha Indian Tribe, 45 F.3d 1241, 1244 (8th Cir. 1995). We agree with the Tribe that a third-party subpoena in private civil litigation is a "suit" for purposes of the Tribe's common law sovereign immunity. As that immunity has not been waived or abrogated, we reverse.

It is well-established that "Indian tribes possess the common-law immunity from suit traditionally enjoyed by sovereign powers." United States v. Red Lake Band of Chippewa Indians, 827 F.2d 380, 382 (8th Cir. 1987). The doctrine "developed almost by accident," initially grounded in the perception that Congress wished to protect dependent, quasi-sovereign Indian tribes from costly claims and interference, and sustained by the failure of Congress to exercise its unquestioned power to abrogate the immunity, in whole or in part. Kiowa Tribe of Okla. v. Mfg. Techs., Inc. 523 U.S. 751, 756-60 (1998), and cases cited. The doctrine applies broadly to a tribe's commercial activities and to activities outside its reservation. See Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 510-11 (1991); Santa Clara Pueblo v. Martinez, 436 U.S. 49, 59 (1978). "[T]ribal immunity is a matter of federal law." Kiowa Tribe, 523 U.S. at 756.

---

[1]We clearly have appellate jurisdiction. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 147 (1993).

Common law sovereign immunity "is an amalgam of two quite different concepts, one applicable to suits in the sovereign's own courts and the other to suits in the courts of another sovereign." Nevada v. Hall, 440 U.S. 410, 414 (1979). Immunity from "suit" limits both concepts. "The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Dugan v. Rank, 372 U.S. 609, 620 (1963) (quotations and citations omitted). A broad definition was first articulated by Chief Justice John Marshall in Cohens v. Virginia, 6 Wheat. (19 U.S.) 264, 407 (1821). Thus, the threshold question raised by the Tribe's claim of tribal immunity is whether a federal court subpoena served on a tribe in civil litigation in which the tribe is not a party constitutes a "suit" triggering the protections of tribal immunity. The question has received surprisingly little consideration in reported judicial decisions.

We note initially that the question is not whether sovereign immunity, as applied by the Supreme Court to Indian tribes as a matter of federal law, limits discovery under the Federal Rules of Civil Procedure in cases in which the tribe is a party. In those cases, the threshold immunity question has been answered -- by tribal consent or waiver when the tribe is a plaintiff, or by a valid waiver or abrogation of immunity when it is a defendant. "The Government as a litigant is, of course, subject to the rules of discovery." United States v. Procter & Gamble Co., 356 U.S. 677, 681 (1958). As the Court observed in Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, 476 U.S. 877, 891 (1986), tribal immunity "does not extend to protection from the normal processes of the state court in which [the tribe] has filed suit."

The third-party subpoenas here at issue raise a very different issue. They command a government unit to appear in federal court and obey whatever judicial discovery commands may be forthcoming. The potential for severe interference with

government functions is apparent. As the Fourth Circuit explained in quashing third-party subpoenas demanding testimony by federal agency officials that was clearly relevant in an underlying civil litigation:

> Even though the government is not a party to the underlying action, the nature of the subpoena proceeding against a federal employee to compel him to testify about information obtained in his official capacity is inherently that of an action against the United States because such a proceeding "interfere[s] with the public administration" and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function.

Boron Oil Co. v. Downie, 873 F.2d 67, 70-71 (4th Cir. 1989), quoting Dugan, 372 U.S. at 620. This interpretation of Dugan was followed by the Fourth Circuit in COMSAT Corp. v. National Science Foundation, 190 F.3d 269, 277 (4th Cir. 1999), and by the Second Circuit in United States Environmental Protection Agency v. General Electric Co., 197 F.3d 592, 597-98 (2d Cir. 1999). The D.C. Circuit instead adheres to the view "that sovereign immunity is not a defense to a third-party subpoena" of a federal agency because of the sovereign immunity waiver found in 5 U.S.C. § 702. Linder v. Calero-Portocarrero, 251 F.3d 178, 181 (D.C. Cir. 2001). But the result is not much different because the D.C. Circuit then enforces "special privileges" to prevent disclosures "inimical to national security or [an agency's] internal deliberations." Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 398 n.2 (D.C. Cir. 1984); accord Exxon Shipping Co. v. U.S. Dept. of Interior, 34 F.3d 774, 779-80 (9th Cir. 1994).

While noting this important issue of sovereign immunity, the Supreme Court has avoided deciding it by applying a narrower basis to protect federal officials from unwarranted third-party discovery. See U.S. ex rel. Touhy v. Ragen, 340 U.S. 462, 467-68 (1951); Boske v. Comingore, 177 U.S. 459, 469-70 (1900). But the Court has endorsed the purposes underlying sovereign immunity emphasized in Boron Oil:

[I]t is one thing to provide a method by which a citizen may be compensated for a wrong done to him by the Government. It is a far different matter to permit a court to exercise its compulsive powers to restrain the Government from acting, or to compel it to act. There are the strongest reasons of public policy for the rule that such relief cannot be had against the sovereign.

Larson v. Domestic & Foreign Corp., 337 U.S. 682, 704 (1949).

Concluding that a third-party subpoena is a "suit" triggering the federal government's sovereign immunity is significant, but it does not give the Executive Branch a "blank check" to ignore third-party subpoenas because the agency response may be judicially reviewed under the Administrative Procedure Act, 5 U.S.C. § 702. Here, the Tribe's claim that tribal immunity confers the same grant of immunity from third-party judicial process is far more unsettling because the Tribe is not subject to the Administrative Procedure Act or to any comparable legislation containing a limited procedural waiver. Therefore, if we adopt the Tribe's position, tribal immunity, a federal common-law doctrine, may well confer greater immunity than that enjoyed by federal officers and agencies, or by the States, whose sovereign immunity is protected by the Eleventh Amendment. See In re Missouri Dept. of Natural Res., 105 F.3d 434, 436 (8th Cir. 1997).

On the other hand, permitting broad third-party discovery in civil litigation threatens to contravene "federal policies of tribal self determination, economic development, and cultural autonomy" that underlie the federal doctrine of tribal immunity. Am. Indian Agric. Credit Consortium v. Standing Rock Sioux Tribe, 780 F.2d 1374, 1378 (8th Cir. 1985). Here, for example, the Tribe's gathering and production of the extensive documents Alltel requests would likely be followed by depositions of all tribal officials identified in those documents. Information gleaned from this discovery would likely reveal deliberations establishing telecommunications policies for the Reservation, information Alltel could then use, not only in its

Arkansas lawsuit against tribal ally DeJordy, but also to persuade federal regulators not to favor the Tribe's efforts to obtain the telecommunications assets Alltel wishes to sell elsewhere. The point is not whether such compelled disclosure is good or bad; it is whether the end result is the functional equivalent of a "suit" against a tribal government within the meaning of its common law sovereign immunity.

In the one civil case squarely addressing this issue, a district court in the Second Circuit followed the reasoning of General Electric and held that tribal immunity barred third-party subpoenas in private civil litigation not unlike the dispute between Alltel and DeJordy in this case. Catskill Dev., LLC v. Park Place Entm't Corp., 206 F.R.D. 78, 86-88 (S.D.N.Y. 2002). Similarly, in In re Mayes, 294 B.R. 145, 154 (B.A.P. 10th Cir. 2003), the court concluded that a bankruptcy debtor's application to avoid a tribe's judicial lien, though commenced by motion rather than complaint, was a "suit" triggering tribal immunity because successful lien avoidance "has the effect of preventing or 'restraining' the tribe from enforcing its judicial lien."

Alltel and the district court rely on our decision in Missouri DNR, where we rejected a non-party state agency's claim of immunity from discovery subpoenas. "There is simply no authority," we noted, "for the position that the Eleventh Amendment shields government entities from discovery in federal court." 105 F.3d at 436. We conclude the reliance is misplaced. Missouri DNR is not controlling. Although Eleventh Amendment precedents are instructive, tribal immunity "is not congruent with that which the Federal Government, or the States, enjoy." Wold Eng'g, 476 U.S. at 890. Moreover, given the public policy underlying sovereign immunity summarized in the above-quoted portion of the opinion in Larson, we are unwilling to predict how the Supreme Court would decide a case in which disruptive third-party subpoenas that would clearly be barred in a State's own courts are served on a state agency in private federal court civil litigation. Based upon the reasoning in cases such as Boron Oil, the Court might well conclude that the Eleventh Amendment

applies, or it might apply a broader form of state sovereign immunity as a matter of comity, which would likewise apply to claims of tribal immunity.

The Tribe counters with United States v. James, 980 F.2d 1314, 1319 (9th Cir. 1992), where the court held that tribal immunity bars a criminal defendant's trial subpoena "unless the immunity had been waived." Accord Cash Advance & Preferred Cash Loans v. State, 242 P.3d 1099, 1108 (Colo. 2010) (relying on James in concluding that tribal immunity applies to a "state investigative subpoena enforcement action"). James did not cite our prior decision in In re Long Visitor, 523 F.2d 443, 446 (8th Cir. 1975), where we concluded that "Indian retained sovereignty" does not bar grand jury subpoenas because "the extension by Congress of federal jurisdiction to crimes committed on Indian reservations inherently includes every aspect of federal criminal procedure applicable to the prosecution of such crimes." James has also been criticized and distinguished in district court opinions involving federal Major Crimes Act prosecutions in which tribes broadly construing James argued that tribal immunity bars discovery of relevant evidence in the tribe's possession. These courts concluded that the Sixth Amendment rights of criminal defendants, and Congress's grant of federal jurisdiction to prosecute major crimes committed in Indian country, counsel against such a broad interpretation of tribal immunity. See United States v. Juvenile Male 1, 431 F. Supp. 2d 1012, 1016-19 (D. Ariz. 2006); United States v. Velarde, 40 F. Supp. 2d 1314, 1315-17 (D.N.M. 1999).

Our panel is of course bound to follow Long Visitor, not James. But in our view, decisions in federal criminal cases are not controlling in this private civil action. The broad issue is how a tribe's sovereign immunity, an immunity created and controlled by federal law, will be enforced in the courts of another sovereign, the United States. As the Eleventh Amendment does not apply, that is largely a question of comity, Nevada v. Hall, 440 U.S. at 416, so federal courts have discretion not to apply the doctrine where it would conflict with more important federal interests, such as the constitutional rights of criminal defendants. See Washington v. Confed. Tribes

of the Colville Indian Reservation, 447 U.S. 134, 153 (1980) ("This Court has [divested tribal powers] in cases where the exercise of tribal sovereignty would be inconsistent with the overriding interests of the National Government."). By contrast, when the question is whether the doctrine applies to non-party subpoenas served in this private civil litigation, no competing federal interests are present other than the general benefits of discovery.

Although the answer to this issue is far from clear, we conclude from the plain language of the Supreme Court's definition of a "suit" in Dugan, and from the Court's "well-established federal 'policy of furthering Indian self-government,'" Santa Clara, 436 U.S. at 62, that a federal court's third-party subpoena in private civil litigation is a "suit" that is subject to Indian tribal immunity. It may be that federal courts applying normal discovery principles could adequately protect Indian tribes from abusive third-party discovery without invoking tribal immunity. See Casino Res. Corp. v. Harrah's Entm't, Inc., 243 F.3d 435, 440 (8th Cir. 2001) ("the Nation (a non-party) can be protected in the discovery process, e.g., Fed. R. Civ. P. 45"); United States v. Menominee Tribal Enters., No. 07-C-316, 2008 WL 2273285, at *13 (E.D. Wis. June 2, 2008); Ho-Chunk Nation v. J.C. Penney Co., Inc., No. 98 C 3924, 1999 WL 1068700, at *2-3 (N.D. Ill. Nov. 17, 1999). But the Supreme Court has consistently applied the common law doctrine even when modern economic realities "might suggest a need to abrogate tribal immunity, at least as an overarching rule," concluding that it would leave that decision to Congress. Kiowa Tribe, 523 U.S. at 758. Thus, even if denying Alltel the discovery it seeks in this case works some inconvenience, or even injustice, "it is too late in the day, and certainly beyond the competence of this court, to take issue with a doctrine so well-established." Standing Rock Sioux Tribe, 780 F.2d at 1379.

For the foregoing reasons, as Alltel has made no claim that any applicable tribal immunity was waived or abrogated, that portion of the district court's Order dated

February 17, 2011, denying the Tribe's motion to quash on the basis of tribal sovereign immunity is reversed.

_____