# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-3176

_____

Rudy Butch Stanko

*Plaintiff - Appellant*

v.

Oglala Sioux Tribe, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: October 17, 2018
Filed: February 22, 2019

_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

_____

LOKEN, Circuit Judge.

Rudy Stanko, a non-Indian, filed this common law and 42 U.S.C. § 1983 action against the Oglala Sioux Tribe and various tribal officers, seeking damages for their violation of his constitutional and civil rights. The pro se complaint alleged that, while traveling on a federally-maintained highway on the Pine Ridge Reservation in South Dakota, tribal officers arrested and detained him on an illegally issued warrant; took him to the Kyle Police Department jail instead of the Oglala Sioux Tribal Court;

assaulted, battered, and placed him in isolation because he was a non-Indian; and stole $700 from his wallet. Stanko appeals the district court[1] order granting defendants' motion to dismiss all claims. We affirm the dismissal with prejudice of claims against the Tribe and the individual defendants acting in their official capacities because those claims are barred by the Tribe's sovereign immunity. We affirm the dismissal without prejudice of claims against defendants acting in their individual capacities on a different ground, failure to exhaust tribal court remedies.

## I. Claims Barred by Tribal Sovereign Immunity.

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978); see Alltel Commc'ns, LLC v. DeJordy, 675 F.3d 1100, 1102 (8th Cir. 2012). The Oglala Sioux are a federally recognized tribe. See Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 83 Fed. Reg. 34,863 (July 23, 2018). Thus, as a matter of federal law, the Tribe is subject to suit only if Congress has authorized the suit or the tribe has waived its immunity. Amerind Risk Mgmt. Corp. v. Malaterre, 633 F.3d 680, 685 (8th Cir. 2011).

The district court properly rejected Stanko's contention that Congress expressly authorized § 1983 suits against Indian tribes. See Will v. Mich. Dept. of State Police, 491 U.S. 58, 67 (1989) ("in enacting § 1983, Congress did not intend to override well-established immunities or defenses under the common law"); cf. Inyo County v. Paiute-Shoshone Indians, 538 U.S. 701, 709 (2003). Stanko made no showing that the Tribe has waived its sovereign immunity; indeed, the Tribe specifically reserved its right to assert sovereign immunity absent consent in 2001 and reaffirmed tribal

---

[1] The Honorable Jeffrey L. Viken, Chief Judge of the United States District Court for the District of South Dakota.

immunity in 2015. OST Ord. No. 01-22; OST Ord. No. 15-16. On appeal, quoting an article by an eminent law professor, Stanko argues that "sovereign immunity is an anachronistic relic and the entire doctrine should be eliminated from American law." Erwin Chemerinsky, Against Sovereign Immunity, 53 Stan. L. Rev. 1201, 1201 (2001). Whatever the merits of this view, "it is too late in the day, and certainly beyond the competence of this court, to take issue with a doctrine so well-established." Alltel, 675 F.3d at 1106 (citation omitted).

The district court properly dismissed Stanko's claims against individual tribal officers acting in their official capacities as also barred by the Tribe's sovereign immunity. "A suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent." McMillian v. Monroe County, 520 U.S. 781, 785 n.2 (1997) (cleaned up). "There is no reason to depart from these general rules in the context of tribal sovereign immunity." Lewis v. Clarke, 137 S. Ct. 1285, 1292 (2017).

In his pro se Response to defendants' motion to dismiss, Stanko argued his complaint states a claim against defendants for violation of the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1302. The district court did not address this contention; we conclude it is without merit. In § 1302, Congress exercised its "plenary authority to limit, modify or eliminate the powers of local self-government which the tribes otherwise possess . . . . by imposing certain restrictions upon tribal governments similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment." Santa Clara, 436 U.S. at 56-57. However, because "Congress also intended to promote the well-established federal policy of furthering Indian self-government," the Court held there is no implied private right of action against tribal officers in federal court to remedy alleged ICRA violations, other than "the habeas corpus provisions of [25 U.S.C.] § 1303." Id. at 62, 70 (quotation omitted). Thus, Stanko's complaint did not state a claim under ICRA against any defendant.

## II. Individual Capacity Claims.

Stanko's claims against tribal officers acting in their individual capacities are not barred by the Tribe's sovereign immunity. See Lewis, 137 S. Ct. at 1292-93. The district court dismissed those claims without prejudice because Stanko's "allegations fail to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). We review this issue de novo. Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 936 (8th Cir. 2012) (standard of review).

Stanko's pro se complaint alleged that the individual defendants violated his Fourth Amendment, Eighth Amendment, and Fourteenth Amendment rights. It alleged the district court had subject matter and personal jurisdiction under 28 U.S.C. §§ 1331 and 1343 (federal question and federal civil rights jurisdiction). Diversity of citizenship was not alleged. The district court ruled that these allegations failed to state a claim because "provisions of the Bill of Rights, as well as . . . the Fourteenth Amendment" do not "operate upon the powers of local self-government enjoyed by the tribes," quoting Santa Clara, 436 U.S. at 56, which in turn quoted Talton v. Mayes, 163 U.S. 376, 384 (1896). We disagree. These cases did not establish that tribal officers cannot be sued individually for violating the constitutional rights of non-Indians while on tribal lands. Non-Indian United States citizens do not shed their constitutional rights at an Indian reservation's border. Thus, the inquiry must focus on whether Stanko stated a plausible claim for violation of those rights that survives defendants' motion to dismiss these claims. "A non-frivolous claim of a [federal] right or remedy . . . is sufficient to invoke federal question jurisdiction." Weeks Constr., Inc. v. Oglala Sioux Hous. Auth., 797 F.2d 668, 672 (8th Cir. 1986).

Stanko's pro se complaint described his claims as "a common law complaint and a complaint pursuant to 42 USC § 1983." The district court ruled (alternatively) that the complaint failed to state a § 1983 claim because it did not allege "that the Individual Tribal Defendants were acting under color of state law." See West v.

Atkins, 487 U.S. 42, 49 (1988) ("acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of *state law* and made possible only because the wrongdoer is clothed with the authority of *state law*") (emphasis added, quotation omitted). We agree with the court's conclusion, but the issue requires further analysis.

Stanko alleged that he was unconstitutionally arrested and detained while driving on "US/BIA Highway 27." For the most part, this alleges tribal officers acting under color of tribal law because "tribal law enforcement authorities possess traditional and undisputed power to exclude persons whom they deem to be undesirable from tribal lands and therefore have the power to restrain [non-Indians] who disturb public order on the reservation, and if necessary to eject them." United States v. Terry, 400 F.3d 575, 579 (8th Cir. 2005) (quotation omitted). "Where jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper [state or federal] authorities." Id. (citation omitted). Stanko's complaint, liberally construed, alleged a violation of this limited authority. Cf. Bressi v. Ford, 575 F.3d 891, 895-98 (9th Cir. 2009) (non-Indian stated a § 1983 claim against tribal officers operating an unconstitutional roadblock on a state highway lying within the reservation, because inquiry beyond determining whether the stopped motorist was a non-Indian was "not authorized on purely tribal authority"). However, Stanko did not allege that the individual defendants were acting under color of state law, as § 1983 requires. He alleged that US/BIA Highway 27 is maintained by the Federal Government, not the State of South Dakota. Thus, his § 1983 claim was properly dismissed.

In his Response to the motion to dismiss, going beyond his § 1983 claims, Stanko also argued that "the substantiality doctrine requires that federal district court entertain a complaint seeking recovery under the Constitution or laws of the United States," citing Bell v. Hood, 327 U.S. 678, 681-82 (1946). The district court did not address this issue. Stanko's counseled brief on appeal pursues the issue, noting that

the complaint alleged it was based on "common law" as well as § 1983. On appeal, Stanko relies on <u>Bivens v. Six Unknown Named Agents</u>, where the Supreme Court, citing <u>Bell v. Hood</u>, held that "violation of [the Fourth Amendment] by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." 403 U.S. 388, 389 (1971). Federal courts have jurisdiction to remedy this "federally protected interest" under 28 U.S.C. § 1331(a); more explicit statutory authorization is not required. <u>Id.</u> at 400-06 (Harlan, J., concurring).

In a brief response to this contention, defendants argue that <u>Bivens</u> "only applies to federal officers acting under color of federal law" and the individual defendants "are officers of the Tribe, and acted under color of tribal law, not federal law." True, but the question is whether this is enough to sustain dismissal of the claim for failure to state a claim. Broadly stated, the question is whether the "substantiality doctrine" reflected in <u>Bivens</u> should be extended to permit a non-Indian to bring a damage action in federal court for violation of his constitutional rights by tribal officers acting under color of tribal law, when non-Indian citizens have a right to bring that action against officials acting elsewhere under color of state or federal law. To be sure, the Supreme Court "has made clear that expanding the <u>Bivens</u> remedy is now a disfavored judicial activity," <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1857 (2017). However, determining whether there are "special factors counselling hesitation" to extend <u>Bivens</u> is a complex inquiry. <u>Id.</u> at 1857-58. Given the recognized limitations on tribal sovereign power over non-Indians on reservation land, this is not a frivolous claim. <u>See</u> <u>Montana v. United States</u>, 450 U.S. 544, 565-66 (1981).

We conclude we need not remand to the district court to address this issue because Stanko's individual-capacity claims were properly dismissed without prejudice for his failure to exhaust an available tribal court remedy. "Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal

-6-

sovereignty. Civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 18 (1987) (citations omitted). Article V of the Constitution of the Oglala Sioux Tribe created an independent tribal judiciary with jurisdiction over "cases, in law and equity, arising under the . . . Constitution [and] the laws of the Oglala Sioux Tribe." Art. V, Section 2. This jurisdiction would obviously include a civil damage action by Stanko alleging that tribal officers acting in their individual capacities under color of tribal law violated his civil rights on reservation land.

When a non-Indian challenges the exercise of tribal court jurisdiction, "the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court 'a full opportunity to determine its own jurisdiction.'" Iowa Mut., 480 U.S. at 16, quoting Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians, 471 U.S. 845, 857 (1985). "Exhaustion is required as a matter of comity, not as a jurisdictional prerequisite. In this respect, the rule is analogous to principles of abstention . . . ." Iowa Mut., 480 U.S. at 16 n.8. Tribal court jurisdiction is not at issue here. "Indian tribes retain inherent sovereign power . . . to exercise civil authority over the conduct of non-Indians . . . within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Montana, 450 U.S. at 565-66; see Strate v. A-1 Contractors, 520 U.S. 438, 456-59 (1997). Whether tribal officers violated the civil rights of a non-Indian traveling on the reservation unquestionably has a direct effect on the political integrity and welfare of the Tribe.

In this case, the federal court has jurisdiction but whether Stanko has a federal cause of action is highly questionable. Though there is no case pending in tribal court, "the reasons for exhaustion cited in National Farmers Union -- the policy of supporting tribal self-government, the advantages of allowing a full record to be developed in tribal court, and the benefit of receiving the tribal court's expertise on

these issues of tribal sovereignty -- apply whether or not the dispute is already pending in tribal court." Duncan Energy Co. v. Three Affiliated Tribes, 27 F.3d 1294, 1303 (8th Cir. 1994) (Loken, J., concurring). Moreover, there is an important additional reason to exhaust tribal court remedies in this case. As we have explained, Stanko has no damage claim under ICRA in federal court. However, "[t]ribal forums are available to vindicate rights created by the ICRA, and § 1302 has the substantial and intended effect of changing the law which these forums are obliged to apply." Santa Clara, 436 U.S. at 65. Thus, tribal court resolution of a tribal law claim under ICRA might well moot or otherwise affect Stanko's assertion of a direct federal claim for violation of his federal constitutional rights. Though this antecedent issue is a question of tribal law rather than state law, the circumstances warrant application of what is called Pullman abstention -- "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 236 (1984).[2]

The judgment of the district court is affirmed.

GRUENDER, Circuit Judge, concurring in part and concurring in the judgment.

I concur in the court's judgment and join part I of the court's opinion. I write separately because I would follow the Supreme Court's lead, refuse to extend *Bivens*,

---

[2]This is not a case like Dry Creek Lodge, Inc. v. Arapahoe & Shosone Tribes, 623 F.2d 682, 685 (10th Cir. 1980), where non-Indian litigants asserting violation of their constitutional rights had "no remedy within the tribal machinery." Where remedies are available in tribal court for tribal-related activities on reservation land, "the doctrine of exhaustion of tribal remedies is analogous to dismissals under the doctrine of abstention." Krempel v. Prairie Island Indian Cmty., 125 F.3d 621, 623 (8th Cir. 1997).

and leave it to Congress to create any new cause of action. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). Thus, Stanko lacks claims under § 1983 and *Bivens*, and the court need not discuss his failure to exhaust tribal court remedies. Indeed, the court's statement that the second *Montana* exception "unquestionably" applies, *ante* at 7, risks undermining Supreme Court precedent limiting its scope, *see, e.g.*, *Plains Comm. Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 330 (2008); *Strate v. A-1 Contractors*, 520 U.S. 438, 456-59 (1997). Accordingly, I would refrain from addressing the complicated issues surrounding tribal court jurisdiction, which are not necessary to resolve the case.

————————————————