# United States Court of Appeals
## For the Eighth Circuit
_____

No. 24-2798
_____

Brendan LaBatte

*Plaintiff - Appellant*

v.

Karen Gangle, Prosecutor for the SWO, in their official capacity; Gary Gaikowski, Chief of Police for SWO, in their official capacity; Hon. Ruth Burns, Judge for the SWO Tribal Court, in their official capacity; Hon. Michael Swallow, Judge for the SWO Tribal Court, in their official capacity

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of South Dakota - Northern
_____

Submitted: February 11, 2025
Filed: December 12, 2025
_____

Before LOKEN, BENTON, and STRAS, Circuit Judges.
_____

LOKEN, Circuit Judge.

Brendan LaBatte is a member of the Sisseton Wahpeton Oyate ("SWO"), a federally recognized Indian tribe. On October 15, 2022, Officer Meagan Lively of the Sisseton Police Department observed LaBatte driving within the city limits of Sisseton. He swerved into the opposite lane, head on with Officer Lively, then drove

through two yards, almost colliding with another car. Officer Lively activated her lights for a traffic stop. LaBatte pulled over in a driveway, ran towards a nearby tribal housing complex, and soon returned to his vehicle. Officer Lively grabbed his wrist; LaBatte pushed off and fled into the housing complex. Tribal police apprehended LaBatte in one of the tribal housing units.

The SWO tribal prosecutor charged LaBatte in SWO Tribal Court with driving under the influence and resisting arrest. South Dakota charged him with resisting arrest, reckless driving and assault against a law enforcement officer in state court. LaBatte moved to dismiss the tribal court action in January 2024. The prosecutor opposed the motion, noting that a 2019 Tribal Council Resolution permitted prosecutions of Tribal members who have not "been convicted and sentenced by the Federal or State government for the same offense arising out of the 'same incident.'"

On February 8, 2024, LaBatte pleaded guilty in state court to simple assault of a law enforcement officer and was sentenced to two years imprisonment. The tribal court then dismissed the DUI charge without prejudice. In July 2024, LaBatte filed this action against tribal officials in the District of South Dakota, alleging the DUI charge exceeded the limits of the Tribe's criminal jurisdiction.[1] The district court[2]

---

[1]Counts I and II allege illegal search, seizure, and prosecution by tribal officials lacking tribal criminal jurisdiction in violation of the Fourth Amendment and the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1302. Section 1302 "impos[es] certain restrictions upon tribal governments similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 57 (1978). Subsections 1302(a)(2) and (a)(6) mirror the Fourth and Sixth Amendments; Subsection 1302(a)(8) incorporates equal protection clause and due process protections. Like the district court, we need not consider the merits of these contentions.

[2]The Honorable Eric C. Schulte, United States District Judge for the District of South Dakota.

dismissed the case for lack of subject matter jurisdiction, concluding that LaBatte's Complaint failed to plead a federal question within the court's jurisdiction under 28 U.S.C. § 1331.

LaBatte appeals, arguing § 1331 grants federal courts jurisdiction to decide "whether a tribal court has exceeded the lawful limits of its jurisdiction," Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 853 (1985), and his Complaint alleges the Tribe exceeded the scope of its criminal jurisdiction by prosecuting LaBatte for a misdemeanor offense that occurred on fee land within the original boundaries of the Lake Traverse Reservation.[3]  The Tribe responds that its "inherent sovereignty," and therefore its criminal jurisdiction, "extends to both its members and territory," and its Constitution provides that the Tribe's jurisdiction "shall extend to lands lying in the territory within the original confines of the Lake Traverse Reservation as described in Article III of the Treaty of February 19, 1867."

## I. The Jurisdiction Issue

"Native American Tribes possess 'inherent sovereign authority over their members and territories.'" Ysleta Del Sur Pueblo v. Texas, 596 U.S. 685, 689 (2022), quoting Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla., 498 U.S. 505, 509 (1991).  Tribes have retained their inherent power "to punish tribal offenders . . . to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members." Montana v. United States, 450 U.S. 544, 564 (1981) (citation omitted).  "It is well established that the scope of tribal court jurisdiction is a matter of federal law." Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 848 (8th Cir. 2003).  A tribe may "retain inherent power to exercise civil authority over the conduct of non-Indians on fee

_____

[3]LaBatte acknowledges on appeal, as he did in the district court, that the tribal charge for resisting arrest was a proper exercise of the Tribe's jurisdiction.

lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Montana, 450 U.S. at 566 (citation omitted).

The sovereignty retained by Indian tribes "is of a unique and limited character. It centers on the land held by the tribe and on tribal members within the reservation." Plains Com. Bank v. Long Fam. Land & Cattle Co., 554 U.S. 316, 327 (2008) (quotation and citation omitted). "[T]he existence and extent of a tribal court's jurisdiction . . . should be conducted in the first instance in the Tribal Court itself." National Farmers Union, 471 U.S. at 855-56. Here, the Tribe has continuously asserted criminal jurisdiction over members within the original 1867 boundaries of the former Lake Traverse Reservation. LaBatte argues that this basis for extended criminal jurisdiction was eliminated when the Lake Traverse Reservation was "disestablished" by the Supreme Court in DeCoteau v. District County Court for Tenth Judicial District, 420 U.S. 425, 428 (1975), where the Court held that the Lake Traverse Reservation was disestablished by an 1891 act of Congress "and that consequently [South Dakota] state courts have jurisdiction over conduct on non-Indian lands within the 1867 reservation borders."

The Lake Traverse Indian Reservation was created by the Treaty of 1867 between the United States and the Sisseton and Wahpeton bands of Sioux Indians, which granted the Tribe a permanent reservation in the Lake Traverse area, provided for tribal self-government under federal supervision within the defined reservation boundaries, and provided that the Indians would cede and convey to the United States "unallotted land within the reservation remaining after the allotments and additional allotments provided for . . . shall have been made." DeCoteau, 420 U.S. at 426-27, 439. At that time, there were 918,000 acres within the Reservation's 1867 boundaries. Residents included 3,000 tribal members and 30,000 non-Indians, with 15% in scattered Indian trust allotments retained when unallotted land was sold to the United States in 1891.

-4-

"Once a block of land is set aside for an Indian Reservation and no matter what happens to the title of individual plots within the area, the entire block retains its reservation status until Congress explicitly indicates otherwise." Solem v. Bartlett, 465 U.S. 463, 470 (1984) (citation omitted). Only Congress can terminate or "disestablish" a reservation and must clearly express its intent to do so. McGirt v. Oklahoma, 591 U.S. 894, 903-04 (2020).

"In the Act of Mar. 3, 1871, ch. 120, 16 Stat. 544, 566 (codified at 25 U.S.C. § 71), Congress discontinued the practice of contracting with Indian tribes 'by treaty' but provided that 'no obligation of any treaty lawfully made and ratified [prior thereto] shall be hereby invalidated or impaired.'" Mille Lacs Band of Ojibwe v. Madore, 128 F.4th 929, 933 n.1 (8th Cir. 2025). The Tribes were not considered sovereign after 1871. In DeCoteau, the Court held that the Lake Traverse Reservation was disestablished by an 1891 act of Congress. 420 U.S. at 445. The Court explained that "[i]n 1887, the General Allotment Act (or Dawes Act) was enacted . . . . The Act empowered the President to allot portions of reservation land to tribal members and, with tribal consent, to sell the surplus lands to white settlers, with the proceeds of these sales being dedicated to the Indians' benefit." Id. at 432. In the 1891 Act, Congress ratified an 1889 Agreement providing that the Indians "ceded" to the United States "all the unallotted land within the reservation remaining after the allotments." Id. at 437, 439. The Court held that the 1891 Act "returned [the ceded lands] to the public domain, stripped of reservation status," thus "terminating" the Lake Traverse Reservation. Id. at 446-49.

"Tribal courts' jurisdiction to adjudicate matters arising in Indian country is broad, encompassing all civil and criminal matters absent limitations imposed by lawful federal authority." Cohen's Handbook of Federal Indian Law § 5.01[2][e] (2024 ed.). "Indian country" includes "all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state." 18 U.S.C.

§ 1151(b). The housing complex into which LaBatte fled is recognized as a dependent Indian community. But Indian Country does not include allotments if the Indian title has been extinguished by the conveyance of fee title to the Indian allottee (commonly called "fee lands"). 18 U.S.C. § 1151(c).[4]

LaBatte concedes that "the tribe can assert jurisdiction wherever a member might be" and "[t]erritory is the foundation of authority for any sovereign" but argues that the Tribe's inherent sovereignty does not justify "some form of free-floating criminal jurisdiction not bound by territory." The Tribe contends its inherent sovereignty encompasses both territory and membership so the Tribe can punish members for conduct beyond its territorial boundaries. Few federal court decisions address this question, and it is an issue of first impression in this court. In Kelsey v. Pope, a Sixth Circuit panel held that the Little River Band of Ottawa Indians retained authority to assert criminal jurisdiction over a member for an off-reservation misdemeanor sexual assault if doing so was "necessary to protect tribal self-government or control internal relations." 809 F.3d 849, 852 (6th Cir. 2016). The court relied primarily on two Supreme Court decisions, United States v. Wheeler, 435 U.S. 313, 322-23 (1978), and Duro v. Reina, 495 U.S. 676, 693-94 (1990), and

---

[4]Some other lands within the original boundaries of the Lake Traverse Reservation are "trust lands," which in federal Indian law "means lands purchased by the Secretary of the Interior under § 5 of the Indian Reorganization Act of 1934, title to which is 'taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired.'" Madore, 128 F.4th at 938 n.5.

on a 1939 Opinion of the Solicitor of the Interior Department.[5]  LaBatte contends <u>Kelsey</u> is an outlier and is wrong.

Even though we likely have § 1331 jurisdiction to consider whether the tribal court has criminal jurisdiction over tribal member LaBatte, we need not decide the extent of the Tribe's criminal jurisdiction, a complex unsettled question, if the tribal court's dismissal of the Tribe's DUI charge rendered LaBatte's federal court claims moot, an alternative jurisdictional issue.[6]  "Under Article III of the Constitution, we may adjudicate only actual, ongoing cases or controversies.  When the issues presented in a case are no longer live, the case is moot and is therefore no longer a 'Case' or 'Controversy' for purposes of Article III."  <u>Whitfield v. Thurston</u>, 3 F.4th 1045, 1047 (8th Cir. 2021) (quotation omitted).  Accordingly, we turn to the merits of the mootness issue.

---

[5]The Opinion stated that membership-based jurisdiction over off-reservation conduct is a matter of historical record:  "That the original sovereignty of an Indian tribe extended to the punishment of a member by the proper tribal officers for . . . misconduct committed outside the territory of the tribe cannot be challenged. . . . That Indian tribes friendly to the United States acted to punish their members for depredations committed against whites outside of the Indian Country is a matter of historical record. . . . The fact is that the United States, over a long period, encouraged the Indian tribes to help in controlling the conduct of their members outside of the Indian country . . . ."  U.S. Dep't of the Interior, Opinion on Law and Order -- Dual Sovereignty -- Powers of Indian Tribes and U.S. (Apr. 27, 1939), <u>as reprinted in</u> 1 Opinions of the Solicitor of the Department of the Interior Relating to Indian Affairs, 1917-1974 891, 896 (1979).

[6]"We may affirm on any ground supported by the record."  <u>Duffner v. City of St. Peters</u>, 930 F.3d 973, 976 (8th Cir. 2019).

## II. Are LaBatte's Federal Claims Moot?

Article III of the Constitution limits the jurisdiction of federal courts to actual Cases and Controversies. Its requirements "are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law." Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 471 (1982). "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Id. at 472 (quotation omitted). The requisite personal interest must exist at the outset and continue throughout the litigation. McCarthy v. Ozark Sch. Dist., 359 F.3d 1029, 1035 (8th Cir. 2004) (citations omitted). If it does not, the claim is moot.

LaBatte's Fourteenth Amendment and ICRA claims are based on his argument that the Tribe's assertion of criminal jurisdiction in charging him with a misdemeanor DUI offense was unlawful. The Tribe raised mootness as a defense in support of its motion to dismiss, arguing the tribal court dismissed the DUI charge; the Tribe is no longer asserting criminal jurisdiction over LaBatte; whether criminal jurisdiction will be asserted in the future is hypothetical; and therefore LaBatte is seeking an advisory opinion regarding the extent of the Tribe's criminal jurisdiction. The district court did not consider the issue, concluding it lacked federal question jurisdiction. On appeal, the Tribe argues mootness as an alternative basis to affirm.

This is not the typical mootness case where the issue is whether a lawsuit that involved an actual case or controversy when filed has become moot "due to the passage of time or a change in circumstances." McCarthy, 359 F.3d at 1035. Here, LaBatte moved to dismiss the tribal DUI charge in January 2024. The prosecutor opposed the motion, relying on the 2019 Tribal Council Resolution. In February, LaBatte pleaded guilty in state court to simple assault and was sentenced to two years

imprisonment. At this point, the 2019 Resolution no longer authorized a concurrent tribal court prosecution.

On July 11, LaBatte filed this federal lawsuit. On July 17, the prosecutor sought dismissal of the state DUI charge based on "prosecutorial discretion," and the tribal court dismissed the DUI charge without prejudice. Though the charge was dismissed after LaBatte filed this lawsuit, the reason the case became moot was not the passage of time or a change in circumstances *after the lawsuit was filed*.

In response to the Tribe's assertion of a mootness defense in the district court, LaBatte argued that the tribal court dismissal "is 'without prejudice' and can be brought back at any time." This is simply wrong. As the Tribe pointed out at oral argument, though the criminal case was dismissed without prejudice, the prosecutor cannot now recharge LaBatte with *that* DUI offense because more than one year has passed since the crime was committed. See Sisseton-Wahpeton Oyate Code, Ch. 23, § 23-01-04. It seems apparent that the tribal court dismissal of the Tribe's misdemeanor DUI charge means there is no real controversy between the parties. "[W]e must refrain from reaching the merits [if] any opinion issued would be merely 'advisory' and rest on hypothetical underpinnings." Missouri ex rel. Nixon v. Craig, 163 F.3d 482, 484 (8th Cir. 1998) (quotation omitted).

In his Reply Brief and at oral argument, LaBatte argues that two exceptions to the mootness doctrine apply and serve to keep the dispute alive. The first exception is voluntary cessation: It is well settled that a defendant's voluntary cessation of a challenged practice does not automatically deprive a federal court of its power to determine the legality of the practice. The purpose of this exception is to deny the mootness defense to a defendant who may be seeking to "engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013). Therefore, a party asserting mootness "bears the

formidable burden of showing it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id., quoting Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 190 (2000).

This case does not fit the voluntary cessation exception paradigm. In charging LaBatte with the misdemeanor DUI violation, the tribal prosecutor relied on the concurrent prosecution policy adopted in the 2019 Resolution. After LaBatte was convicted and sentenced under South Dakota law for the same incident, the 2019 Resolution no longer authorized a concurrent tribal court prosecution. The prosecutor then sought dismissal of the charge based on "prosecutorial discretion," and the tribal court dismissed *this* DUI prosecution. Thus, the Tribe's "voluntary cessation" was based on the facts of the case, not because the policy adopted in the 2019 Resolution was repealed or repudiated. And now, with the Tribe's criminal statute of limitations expired, it is absolutely clear that this allegedly wrongful behavior cannot recur. This mootness exception does not apply. "This, of course, is not to say that [the Tribe] would be prevented from asserting a right to present claims against [LaBatte] for equitable relief in federal court should [his] disputed conduct be repeated." Cf. Deakins v. Monaghan, 484 U.S. 193, 202 n.5 (1988).

The second exception is for disputes "capable of repetition, yet evading review." It applies when "there is a reasonable expectation that the same complaining party will be subject to the same action again." Fed. Election Comm'n v. Wisconsin Right to Life, Inc., 551 U.S. 449, 462 (2007). LaBatte, the party opposing mootness must show "a reasonable expectation that [he] will again be subjected to the threat of prosecution under [tribal criminal] law." Id. at 463 (cleaned up).

The Tribe charged LaBatte with a misdemeanor DUI violation, relying on the concurrent prosecution policy adopted in the 2019 Resolution. The Tribe has continuously maintained that its tribal constitution authorizes this exercise of its criminal jurisdiction against tribal members for conduct within the 1867 boundaries

of the former Lake Traverse Reservation. Though the Tribe cannot recharge LaBatte with a DUI violation for his conduct in October 2022, it asserts the authority to charge LaBatte (and other tribal members) for future DUI offenses in that territory.

LaBatte argues the Tribe's policy "of asserting criminal jurisdiction over tribal member[s] on State owned fee land" is unchanged, "can be repeated," and is "easily reinstated." True enough, but that does not establish that the capable-of-repetition exception applies in this case. The exception applies when "there was a reasonable expectation that the same complaining party would be subject to the same action again," here a DUI prosecution. Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (citation omitted). LaBatte now knows (if he did not know at the time of the 2022 offenses) that the Tribe is reasonably likely to prosecute if he again resists arrest and assaults a law enforcement officer while committing a DUI offense within the city limits of Sisseton. With full notice of this risk of criminal liability, LaBatte can avoid it *simply by obeying the law* -- refraining from repeating this criminal conduct. LaBatte cites no authority applying the capable-of-repetition exception in a comparable fact-intensive context. Given LaBatte's freedom to avoid a second prosecution simply by obeying the law, he has not shown "a reasonable expectation that the same complaining party would be subject to the same [prosecution] again." On this record, we conclude the exception does not apply.

The claimed exceptions do not apply, and this case must be dismissed. We affirm the judgment of the district court, vacate the court's decision, and therefore need not decide the jurisdiction, sovereign immunity, and tribal court exhaustion issues the parties have briefed and argued. See Madore, 128 F.4th at 942-43.[7]

_____

[7]Even if there is no case pending in tribal court, "'the reasons for exhaustion cited in National Farmers Union . . . apply whether or not the dispute is already pending in tribal court.'" Stanko v. Oglala Sioux Tribe, 916 F.3d 694, 700 (8th Cir. 2019) (quotation omitted).